## OKLAHOMA HOSPITAL v. BROWN.

No. 10580—Opinion Filed May 30, 1922.

Rehearing Denied July 25, 1922.

(Syllabus.)

### 1. Evidence—Expert Testimony — Personal Injuries.

When in an action for personal injury, the injury complained of is of such a character as to require skilled and professional men to determine the cause and extent thereof, the question is one of science and must necessarily be proven by the testimony of skilled professional persons.

### 2. Trial—Demurrer to Evidence.

The test applied to a demurrer to the evidence is that all the facts which the evidence in the slightest degree tends to prove, and all inferences or conclusions which may be reasonably and logically drawn therefrom, are admitted. The court cannot weigh conflicting evidence, but must treat as withdrawn the evidence which is most favorable to the demurrant.

### 3. Appeal and Error—Harmless Error— Overruling Demurrer to Evidence.

Where defendant demurs to the evidence of the plaintiff in chief, and afterwards introduces evidence, which supplies the omission or defect in the evidence of the plaintiff, the error in overruling the demurrer is cured, and the ruling thereon becomes harmless.

Error from District Court, Tulsa County; N. E. McNeill, Judge.

Action by C. A. Brown against Oklahoma Hospital for damages for personal injuries. Judgment for plaintiff, and defendant brings error. Affirmed.

A. F. Moss and L. G. Owen, for plaintiff in error.

Biddison & Campbell, for defendant in error.

NICHOLSON, J. This action was instituted by the defendant in error, as plaintiff, against the plaintiff in error, as defendant, to recover damages for injuries alleged to have been sustained by the plaintiff while he was being treated in the hospital of the defendant in Tulsa. We will refer to the parties as they appeared in the trial court.

It is disclosed by the record that the plaintiff sustained an injury to his back and spine which caused the muscles of his lower back and legs to become paralyzed and rendered his back in the lumbar region insensible to pain; that he was by his empoyer taken to the defendant's hospital and admitted in said hospital as a patient; that owing to plaintiff's condition he was placed on what is known as a "Bradford Frame," which was an iron frame the size of a mattress with canvass stretched over each end and an open space in the middle from 18 inches to two feet wide; that a bed pan was placed under this frame; that in order to keep the body of the plaintiff from touching the bed pan, a brick was placed under each corner of the frame. It further appears that a sore developed on plaintiff's back and hips, and it is this sore that is made the basis of the action, the plaintiff contending that such sore was caused by the negligence of the defendant in permitting his body to rest upon or touch the bed pan during a greater part of the time he was in the hospital. which

was from September 14, 1917, to sometime in the month of October, 1917. A verdict was returned in favor of the plaintiff for the sum of $3,750, upon which judgment was rendered, and to review which this proceeding in error was commenced.

At the close of the plaintiff's evidence the defendant presented a demurrer thereto on the ground that such evidence was insufficient to constitute a cause of action against the defendant. The demurrer was overruled and it is contended that in this the court erred, for the reason that the plaintiff sought to recover damages on account of certain bed sores with which he claims to have been afflicted, and there was no competent evidence, and in fact no evidence, as to the cause of such bed sores; that the cause of the same is a matter of science and is a subject on which only expert testimony is admissible; that plaintiff's injuries being a matter of science, the cause thereof could only be proven by the testimony of skilled professional persons.

It is the settled rule that where the injuries complained of are of such a character as to require skilled and professional men to determine the cause and extent thereof, the question is one of science and must necessarily be determined by the testimony of skilled professional persons. Willett v. Johnson, 13 Okla. 563, 76 Pac. 174; Atchison, T. & S. F. Ry. Co. v. Melson, 40 Okla. 1, 134 Pac. 388; Ft. Smith & Western Ry. Co. v. Jones, 63 Okla. 228, 163 Pac. 1110; Ft. Smith & W. Ry. Co. v. Hutchinson, 71 Oklahoma, 175 Pac. 922; St. L. & S. F. Ry. Co. v. Criner, 41 Okla. 256, 137 Pac. 705.

If the injuries for which the plaintiff seeks to recover were bed sores, and if the cause and effect of bed sores is a matter of science, there would be merit in defendant's contention, and the rule above annouced would apply, but nowhere do we find that the plaintiff claims to have been afflicted with bed sores. In his petition he sets out the nature and cause of the injury for which he asks damages in the following allegations:

"Said employes and nurses compelled the plaintiff to lie prone upon his back both day and night over and upon a metal vessel, known and designated as a bed pan.

"That said metal was unprotected on its edge by a cushion, cloth, rubber or other substance to protect the naked flesh of the plaintiff from bruises and incisions therein caused by the constant weight of plaintiff's body against said metal edges or rims. * * *

"That the infrequent changes of said pan resulted in the accumulation of foul and damp discharges of matter, which while deposited therein touched and evaporated upon and against the exposed flesh of the plaintiff's back and buttocks. * * *

"The plaintiff alleges that the aforesaid negligent, wrongful, unskillful and cruel treatment suffered by him, at the hands of defendant's employes and nurses, caused him great bodily pain and mental anguish during the period he was confined in said hospital; that the contact of his flesh with the said metal pan and damp, foul and poisonous issues therefrom resulted in a chronic sore or wound, and as plaintiff has gradually been recovering under proper care from the original paralyzed condition which caused his entry into the dfendant's hospital, the sensibility to pain in his back is becoming more noticeable, with the result that he has and does suffer excruciating bodily pain and mental anguish from said wound or sore caused as hereinbefore alleged solely by defendant's negligence."

And he testified that his back and hips rested against the bed pan; that there was no padding or rubber or anything around the pan to protect his flesh. He further testified that he told Doctor Clinton, who was president of the defendant hospital, that he believed the pan would hurt him and that the Doctor replied: "You are not resting heavy enough on that for it to hurt you."

He further testified that there was no sore on him when he went to the hospital, but when he left there was a sore on his back "that dug down to the naked backbone, and there was also a sore on each hip." Other witnesses testified to the condition of the plaintiff when he left the hospital and described the sore on his back and hips. The evidence shows that the sore was four or five inches in diameter. Doctor J. Jackson testified that the sore was possibly a little more than four inches long and three inches wide; that it was a festering sore, discharging puss and blood. Nowhere do we find any evidence that the sores complained of are what are denominated bed sores. We cannot say that the court erred in overruling defendant's demurrer to the evidence. The test to be applied to a demurrer to the evidence is that all the facts which the evidence in the slightest degree tends to prove, and all inferences or conclusions which may reasonably and logically be drawn from the evidence, are by said demurrer admitted. The court cannot weigh conflicting evidence, but must treat the evidence as withdrawn which is the most favorable to the demurrant. Rose v. Woldert Grocery Co., 54 Okla. 566, 154 Pac. 531; Smith v. Rockett et al., 79 Okla. 244,

192 Pac. 691; Prairie Oil & Gas Co. v. Kinney, 79 Okla. 206, 192 Pac. 586.

Applying this test, the only inference or conclusion which could logically be drawn from the evidence on behalf of the plaintiff is that the sores complained of were the result of his body resting upon the bed pan. Furthermore, Doctor Clinton, a witness for the defendant, testified as follows:

"Q. Now, you saw the plaintiff's body when it was exhibited to the jury yesterday? A. Yes, sir. Q. You saw those scars there? A. Yes, sir. Q. Doctor, in your opinion could those scars have been caused from the bed pan that is used under this Bradford Frame? A. Not all three of the scars; no, sir. A. Now, what ordinarily produces what you call bed sores, and what are they, first? A. Bed sores? Q. Yes, what I mean is describe what a bed sore is. A. A bed sore is a sore that develops on exposed—on any bony prominences of the body, such as the sairal region, over the hips and heels and the elbows, consequent upon nutritional disturbances such as lowered vitality, impaired vitality, prolonged remaining in bed, accompanied by pressure and uncleanliness of the irregular portions upon which the body rests"

—and on cross-examination said:

"Q. Persons paralyzed are particularly subject to bed sores if there is any pressure upon the paralyzed part, are they not, Doctor? A. Yes, sir. Q. The heat that you speak of that is calculated to cause such sores is such heat as you might have from the heat of the body? A. Yes, or maybe from other sources, too. Q. But that would be such heat as would tend to cause it? A. Yes, Q. And the fumes or moisture from the evaporation of the urine, and the fumes from the fecal matter in a bed pan would tend to make the necessary moisture, would it not? A. If left in contact, in actual contact. Q. And the fumes from the urine in the bed pan and from the fecal matter remaining in the bed pan would tend to infect such a sore, if it was a sore, wouldn't it? A. Not unless it came in actual contact with it. Q. And you think that the fumes would not tend to—the evaporation from that would not tend to—infect it? A. It may irritate, but not infect. In the sense you mean you must have actual contact to establish it. It don't travel just by fumes, it requires actual contact to make it worse. Q. That makes it worse? A. Yes. * * * Q. No, I mean for example, if the sore was over the container this fresh fecal matter and urine, not close contact, not in contact with the urine and fecal matter, but immediaely over it, do you think that would have a tendency to infect? A. Oh, yes, it would have a tendency to, yes. Q. That is true? A. But it would be worse if it was in contact with it."

This witness qualified as an expert, and if it could be said that there was a failure on the part of the plaintiff to prove the cause of the sores by the testimony of a skilled professional person, and that the court erred in not sustaining the demurrer, this defect was supplied and the error cured by this testimony.

In Kali Inla Coal Co. v. Ghinelli, 55 Okla. 289, 155 Pac. 606, it was held that where the defendant demurs to the evidence in chief and afterwards introduces evidence, thereby supplying the omission or defect in the evidence of the plaintiff, the overruling of the demurrer becomes harmless. The same rule is announced in Johnson v. Underwood (Ore.) 203 Pac. 879. The testimony of Doctor Clinton shows that persons paralyzed are particularly subject to bed sores if there is any pressure upon the paralyzed part. The evidence is undisputed that the plaintiff's back and hips were paralyzed, and there is no question but that his back and hips rested upon the bed pan. So, from the evidence of Doctor Clinton, the conclusion might logically be reached that the pressure of plaintiff's body upon the bed pan was the cause of the injury complained of.

It is next contended that plaintiff wholly failed to sustain by competent evidence his burden of showing that the defendant was negligent and that the negligence was the proximate cause of the injury, and it is urged that it was incumbent upon plaintiff to show what was the ordinary care and treatment given by a hospital in the vicinity of Tulsa, where the patient was afflicted as he was. It seems to us that the evidence of the plaintiff fully establishes negligence on the part of the defendant. In our opinion it would be negligence to permit a patient, helpless as was the plaintiff, to lie upon a bed pan, as the evidence shows that the plaintiff was permitted to do, whether it be in a hospital in the vicinity of Tulsa or elsewhere.

We have examined the instructions given to the jury, of which complaint is made, and are unable to determine wherein they are objectionable. These instructions fairly state the principles of law applicable to the case, and the court did not err in giving the same.

Failing to perceive any reversible error in the record, the judgment of the trial court is affirmed.

JOHNSON, MILLER, ELTING, and KENNAMER, JJ., concur.