### SHEPARD et al. v. CRUMBY et al.

No. 21234. Opinion Filed Dec. 2, 1930.

Burford, Miley, Hoffman & Burford and Roy V. Lewis, for petitioners.

Hill & Hill, for respondents.

CULLISON, J. This is an original proceeding in this court to review an order and award of the State Industrial Commission of Oklahoma wherein the Commission awarded the respondent, W. B. Crumby, compensation for an injury received while in the employ of petitioner Y. S. Shepard. To reverse said order and award the petitioners, Y. S. Shepard and the insurance carrier, Globe Indemnity Company, appeal to this court.

The respondent W. B. Crumby, a carpenter by trade, was regularly employed by the petitioner Y. S. Shepard for sometime prior to and at the date of the accident in question.

On February 7, 1929, the day respondent received the injury complained of, owing to inclement weather, petitioner decided to "lay off" his carpenter helpers until weather conditions were suitable for outside work. The respondent complained to petitioner that he was badly in need of work, and an agreement was reached between these parties whereby respondent was given the task of assembling and nailing together window frames for use on houses then being constructed by petitioner. While so engaged the respondent came in contact with a "buzz-saw" which was being used on the premises of petitioner to cut lumber, and sustained a cut at the middle joint of respondent's right forefinger, which cut caused the finger to become stiff at the middle joint.

Thereafter, and in due time, respondent filed claim with the State Industrial Commission seeking compensation for said injury.

A hearing to determine extent of disability and liability therefor was had before the Industrial Commission, September 20, 1929, which hearing was continued from time to time by agreement of parties, and on March 11, 1930, the Commission made and entered its findings and order, reciting:

"(1) That on or prior to February 7, 1929, claimant was in the employment of respondent herein, engaged in a hazardous occupation, within the meaning of the Workmen's Compensation Law.

"(2) Arising out of and in the course of his employment, claimant herein sustained an accidental personal injury on or about February 7, 1929, as a result of which he was disabled from the performance of manual labor from the date of the accident to July 1, 1929.

"(3) That as a result of the aforementioned accident, claimant sustained a permanent disability to his forefinger of the right hand, in that it is permanently stiff in the joint, thereby resulting in a disability of 75 per cent. to the use of the aforementioned finger.

"(4) The average wage of claimant was $7.75 per day."

Based upon such findings, the Commission ordered the petitioner or insurance carrier to pay respondent the sum of $472.50, being 26¼ weeks' compensation at the rate of $18 per week, amounting to 75 per cent. permanent disability to the right forefinger, and for the medical expense incurred by respondent.

It is to review such order and award that petitioners come here on appeal.

The first assignment of error urged by petitioners is:

1. "The Commission was without jurisdiction of the claim, and erred, in its order and award in finding that claimant was an employee within the meaning of the Workmen's Compensation Law."

In support of said assignment the petitioners in their brief say:

"The facts adduced at the hearing conclusively show that claimant was not an employee of the respondent within the meaning or intent of the Workmen's Compensation Law, but was, at the time of the injury, an independent contractor. As such, claimant was not entitled to compensation under the Workmen's Compensation Law of this state, and the Commission was without jurisdiction to make any order and award herein other than to dismiss the claim."

It is definitely settled that an independent contractor does not come within the cognizance of the Workmen's Compensation Law of this state. Moore & Gleason v. Taylor, 97 Okla. 193, 223 Pac. 611. It is admitted

that if respondent was an "employee" and not an "independent contractor" at the time of the accident, the Industrial Commission did have jurisdiction to hear the claim.

This court in Wagoner v. A. A. Davis Construction Co., 112 Okla. 231, 240 Pac. 618, held:

"An independent contractor is one who, exercising an independent employment, contracts to do a piece of work according to his own methods and without being subject to the control of his employer except as to the result of the work."

In the body of the opinion, the court said:

"Under the authorities, generally, the test to be applied in determining whether a person is an employee or independent contractor, is whether the employer reserves the right to control the manner of doing the work. * * *"

In Federal Mining & Smelting Co. v. Thomas et al., 99 Okla. 24, 225 Pac. 967, this court in differentiating between an "employee" and an "independent contractor" quoted with approval the language used in vol. 14, Ruling Case Law, at page 58, wherein it is stated:

"In this connection the ultimate question is not whether the employer actually exercised control of the doing of the work, but is whether he has the right to control."

Again, in Bodwell v. Webster, 98 Neb. 664, 154 N. W. 229, Ann. Cas. 1918C. 624 (also quoted with approval by our court in the Federal Mining & Smelting Case, supra):

"It is the actual relation and not the form that controls."

In the body of the opinion in Federal Mining & Smelting Co. v. Thomas, supra, it is further said:

"* * * We are forced to the conclusion that each case must stand more or less on its own bottom, and, employment being the result of contractual relations, either expressed or implied, the fact is largely determined by the intention of the parties expressed in the contract, and the nature of the services rendered."

Under the record herein, was the respondent an "employee" or an "independent contractor?" The answer to this question necessitates a review of the evidence herein.

In this case the evidence shows that respondent was a regularly employed carpenter by petitioner; that during two or three days of inclement weather, respondent, at his own request, was given a job by petitioner to nail together window frames at a stipulated price per frame. As to what were the actual terms of this agreement, the evidence discloses the following:

The testimony of respondent, in narrative form, is:

"Mr. Guthrie, the foreman, gave me orders. He showed me the lumber and passed around once in a while. I was under the direction of Mr. Guthrie as foreman. Mr. Shepard (petitioner herein and respondent's employer) told me what to cut. Him and the foreman explained it to me. I was working under his (Guthrie's) directions; he gave out the lumber that was stacked up and gave it to me. I knew when I was working on these window frames that I was working for Mr. Shepard. I had a conversation with Mr. Shepard regarding the building of the frames. He told me what to cut—him and the foreman explained it. Mr. Guthrie (the foreman) furnished me the supplies."

Mr. Y. S. Shepard, the petitioner herein, and respondent's employer, testified:

"Mr. Crumby (respondent) was working on frames that my foreman had given him to do. This was under contract to build the frames for two houses."

Mr. F. E. Guthrie, foreman for the petitioner and employer, testified:

'Well, the weather was bad and I told all of the men that morning it was too bad to work out in the weather and do anything and to lay off, and I carried one or two of the old men to another job, inside. That's where I was that day—and he said (referring to respondent): 'I want something to do. I need the work; and I said 'We have some windows to nail together;' and I told him what we would pay, and he said he wanted more, and I said we could not pay more and if he wanted to make them at that price all right, and he said he would do it. He (respondent) was working for Mr. Shepard (employer). Myself or Mr. Shepard had the right to hire or fire him (respondent). I had the right to fire him (respondent) that day."

The evidence convinces us that the petitioner (employer) had the general control and supervision of the work; that the petitioner had the control of the premises; that the petitioner had general control of the workmen; that the petitioner or his foreman, under their own version of the contract, had the right to fire or hire the respondent; that all supplies and equipment were furnished by petitioner, and the mode and method of payment was under the control of petitioner.

The Industrial Commission found as a fact that the respondent was an "employee" and not an "independent contractor."

In Federal Mining & Smelting Co. v.

Thomas, 99 Okla. 24, 225 Pac. 967, this court held:

"Whether a workman is an employee or an independent contractor is a question of fact, upon which the judgment of the Industrial Commission is conclusive, where the facts are in dispute. It only becomes a question of law when no other inference can reasonably be drawn from the facts than that the workman was an independent contractor. The decision of the Commission that the workman is an employee and not an independent contractor is conclusive where the facts are in dispute."

Under the above evidence, we cannot say that "no other inference can reasonably be drawn therefrom than that the claimant was an independent contractor." To the contrary, all the evidence tends most strongly to establish that claimant at the time of the injury was an "employee" and not an "independent contractor." The facts upon this question are disputed. There is competent evidence herein to support the finding by the Commission that respondent was not an independent contractor, but that he was an employee, and this finding will, therefore, not be disturbed by this court on appeal.

2. The second assignment of error presented by petitioners is:

"The Commission erred in its finding and order that claimant was disabled from doing manual labor from the date of the injury, February 7, 1929, until July 1, 1929."

The contention is not well taken. The above finding to the effect that claimant suffered temporary total disability as a result of the alleged injury for the period of time from February 7, 1929, to July 1, 1929, becomes immaterial upon this appeal, for the reason the Commission in its order of March 11, 1930, made no award for temporary total disability based upon such finding, but limited its award to the 75 per cent. permanent disability to claimant's forefinger.

3. The third contention urged by petitioners is:

"The Commission erred in its finding and order and award based thereon, that the average wage of claimant was $7.75 per day."

In answer to this contention, it is sufficient to say, we have examined the evidence, and while there is some conflict in the testimony, there is evidence embodied in the record tending to support the above finding made by the Commission, and the same, therefore, is binding upon this court and will not be disturbed on appeal. Dillon v. Spanhanks, 139 Okla. 33, 280 Pac. 1100; New York In-demnity Co. v. Ferrell, 142 Okla. 235, 286 Pac. 314; Smith v. Atlas Portland Cement Co., 142 Okla. 249, 286 Pac. 788; Richards v. State Industrial Com., 143 Okla. 29, 287 Pac. 69; Capitol Drilling Co. v. Cole, 143 Okla. 279, 288 Pac. 473.

4. The fourth contention presented by the petitioners is:

"The Commission erred in its finding, conclusions and order of 75 per cent. permanent disability of the right forefinger."

The Commission in its order found that as a result of the aforementioned accident, respondent sustained a permanent disability to his right forefinger, resulting in a disability of 75 per cent. to the use of said finger, and awarded respondent compensation for a period of 26¼ weeks at the rate of $18 per week, amounting to $472.50, the same being 75 per cent. of 35 weeks for permanent disability for loss of the use of the forefinger of the right hand at $18 per week.

The only competent evidence whatever before the Commission as to the permanency of the injury to the right forefinger of respondent was the report of Doctors Earl D. McBride and E. Margo, which report was admitted in evidence by agreement of the parties in lieu of the personal testimony of the doctors themselves. The report, after reciting the nature of said injury, concludes:

"Opinion. The middle phalangeal joint has been permanently damaged to the extent that the finger is useless from this joint to the tip. It would be better if it was amputated at this joint. The bone of the first phalanx is not involved except that it is stiff in the middle joint. I estimate the permanent loss of use of this finger to be 50 per cent.

"(Signed) Earl D. McBride and E. Margo. M. D." (Emphasis ours.)

The above is the only expert evidence herein as to the permanency and degree of disability. The Commission, however, without any further evidence on this question, made a finding that the permanent disability to the finger was 75 per cent., disregarding the only expert testimony as to the degree of permanency of said injury, which injury was of such a character as to require skilled professional men to determine the cause and extent thereof.

At the hearings held in the case at bar, no doctors were called as witnesses, no reports of doctors who examined respondent's injured member were introduced in evidence, save and except the report of Drs. McBride and Margo, above set out.

There is not one scintilla of evidence in the record to support the finding made by the Commission that the degree of disability due to the injury in question constituted 75 per cent. permanency.

In St. Louis Mining & Smelting Co. v. State Industrial Com., 113 Okla. 179, 241 Pac. 170, this court held:

" 'When, in an action for personal injury, the injury complained of is of such a character as to require skilled and professional men to determine the cause and extent thereof, the question is one of science and must necessarily be proven by the testimony of skilled professional persons.' Okla. Hospital Co. v. Brown, 87 Okla. 46, 208 Pac. 785.

"The findings of fact by the State Industrial Commission are conclusive upon this court and will not be reviewed where there is any competent evidence to support the same, but in the absence of any competent evidence to support such findings of fact and the resulting award based thereon, the question of liability becomes a pure question of law for the determination of this court."

To uphold the finding of the Commission herein, unsupported by any competent testimony whatsoever, which finding is in direct conflict and contrary to the expert opinion of skilled physicians and surgeons, specialists in their line of work, would in effect amount to a holding that the opinion of any layman upon a question which of necessity must be determined by the testimony of those qualified as experts, must be given the same weight as the testimony of those qualified to determine such question. Such a holding would be contrary to all fundamental rules of evidence.

While this court has always endeavored to construe the Workmen's Compensation Act liberally and with a view to carrying out its benevolent purposes, yet, as is said by the Supreme Court of California, in Western Indemnity Co. v. Pillsbury, 172 Cal. 807, 159 Pac. 721:

"It would be unfair to the employers, unfair to the insurers, and unfair to the legitimate beneficiaries of the statute for us to try by every devious twist of interpretation to uphold every award made, merely because the person seeking it might be unfortunate."

We are of the opinion, and hold, the finding by the Commission, that the permanent disability to respondent's finger was 75 per cent.—when the only evidence as to the degree of permanency was the report of the attending physicians that respondent would suffer 50 per cent. permanent loss of the use of the finger—finds no support in the record. Said finding is therefore vacated and set aside.

The record does disclose, affirmatively, that the claimant is suffering a 50 per cent. permanent loss of use of his forefinger.

The award made herein by the Industrial Commission to respondent, in the sum of $472.50, being 75 per cent. of the 35 weeks' compensation allowed by the statute (sec. 7290, C. O. S. 1921, as amended by section 6, ch. 61, S. L. 1923), at the rate of $18 per week, is hereby vacated and set aside, with directions to the State Industrial Commission to modify said order and award the respondent herein compensation for 50 per cent. permanent disability to his right forefinger, at the rate of $18 per week, and for the medical expenses incurred by respondent.

The order and award of the Industrial Commission, dated March 11, 1930, is hereby reversed and the cause remanded, with directions to the Commission to enter its order and award in conformity with the views herein expressed.

HUNT, RILEY, HEFNER, SWINDALL, and ANDREWS, JJ., concur. MASON, C. J., absent. LESTER, V. C. J., not participating. CLARK, J., dissents.