## MAGNOLIA PETROLEUM CO. v. SNAPP et al.

No. 21844. Opinion Filed May 12, 1931.

B. B. Blakeney, Hubert Ambrister, and W. R. Wallace, for petitioner.

Leo J. Williams and M. J. Parmenter, for respondents.

ANDREWS, J. This is an original proceeding to review an award of the State Industrial Commission made on the 23rd day of September, 1930, in favor of the claimant therein, respondent herein, awarding him compensation at the rate of $18 per week for a period of 325 weeks in the total sum of $5,850, and temporary total disability at the rate of $18 per week for a period of 18 weeks, for an accidental personal injury arising out of and in the course of his employment with the petitioner.

The basis of the award is that the respondent was struck in the left eye by a

piece of steel, causing a total permanent loss of vision therein and a permanent partial loss of vision in the right eye. The Commission found the disability to the right eye to be 30 per cent. of loss of vision therein.

Under the rule stated by this court in Maryland Casualty Co. v. State Industrial Commission, 139 Okla. 302, 282 Pac. 293, the 100 per cent. and 30 per cent. were added, the total divided by two, resulting in 65 per cent., and the 65 per cent. was applied to the 500 weeks maximum, resulting in an award of 325 weeks.

There is no issue here as to the permanent total loss of the left eye. The petitioner contends that there was no competent testimony reasonably tending to support the finding of any loss of vision in the right eye on account of the accident, and that, if there is any loss of vision in the right eye, it did not arise out of and in the course of the employment with the petitioner.

The evidence is conflicting and while under the state of the record the evidence of the respondent is entitled to little credence, that was a matter for the State Industrial Commission to consider, and, under the rule stated by this court in Standard Coal Co. v. State Industrial Commission, 139 Okla. 269, 281 Pac. 966, this court may not give effect thereto, but must approve the award if there is any evidence reasonably tending to support the same.

The record shows that respondent is a machinist and had worked at that trade ever since he was a boy. He testified that there was nothing wrong with his vision prior to the date of the injury; that he was examined before he went to work; that he did not wear glasses prior to the injury; that he had never received any direct injury to the right eye; and that his vision is not clear in that eye now. Dr. Guthrie testified that respondent had a defect of vision in the right eye of "51 per cent. under the Snellen table," and that it is possible to have a loss of vision in the opposite eye when an injury has been sustained, "simply by his loss of vision. You don't absolutely know it; you just take it for granted, if a man has lost his vision, and there is a loss of one eye, it affects the other." Dr. Wales testified on behalf of the petitioner:

"I don't believe the accident had anything to do with it other than make him less able to carry the strain which he had been carrying before. They have to break down sometime or other, and not being able to make up for the defect, and if one is in bed. or anything else that impairs their vitality, they might have other inability or defect for distance come to the surface a little quicker. It would have come sooner or later, because one cannot make up for that defect indefinitely, but it is possible that his injury might have brought this on a few weeks or a few months earlier. I say that is possible, and that is the only connection I can see between the two."

Dr. Phelan was asked by petitioner's attorney what objective symptoms, if any, he found in the right eye, and his answer was, "Practically none." On cross-examination he said, "The eye-ball was practically normal; the lids were slightly congested; the fundus was slightly congested, but practically normal." He was asked and answered:

"Q. Doctor, what, if anything, did you find that would cause this loss of vision? A. Well, the only reason I could give for it would be it was from; the left eye is diseased, and the disease traveled up through the optic nerve in the brain—the optic nerve of the left eye meets the optic nerve of the right eye. Q. Is that what is commonly called sympathetic irritation? A. Yes, that is what is meant by that."

On redirect examination he was asked and answered:

"Q. Now, Doctor, the condition I understood you to say—the condition of the right eye was not brought on by the left eye? A. No, I wouldn't say that."

That testimony, construed under section 7290, C. O. S. 1921, as amended by the Session Laws of 1923, ch. 61, sec. 6, subd. 6,

"6. Previous Disability: The fact that an employee has suffered previous disability, or received compensation therefor, shall not preclude him from compensation for a later injury; but in determining compensation for the later injury his average weekly wages shall be such sum as will reasonably represent his earning capacity at the time of the later injury"

—is sufficient to support the award made. See Shell Petroleum Corp. et al. v. Moore et al., 147 Okla. 243, 296 Pac. 390.

Notwithstanding the opinions in Oklahoma Hospital v. Brown, 87 Okla. 46, 208 Pac. 785, St. Louis Mining & Smelting Co. et al. v. State Industrial Commission et al., 113 Okla. 179, 241 Pac. 170, and Shepard et al. v. Crumby et al., 146 Okla. 118, 293 Pac. 1049, we think that there is competent evidence in the record reasonably tending to support the award, and the same is approved.

LESTER, C. J., and HEFNER, CULLISON, SWINDALL, McNEILL, and KORNEGAY, JJ., concur. CLARK, V. C. J., and RILEY, J., absent.