**CHANNING et al. v. FISHER et al.**

No. 21704. Opinion Filed June 23, 1931.

Rehearing Denied July 28, 1931.

Ray McNaughton and J. Fred Swanson, for petitioners.

Edgar Fenton and H. L. Palmer, for respondents.

KORNEGAY, J. This is an original proceeding to review an award of the Industrial Commission. The award, omitting the caption, is as follows:

"Now, on this 13th day of August, 1930, the State Industrial Commission being regularly in session, this cause comes on to be

considered pursuant to a hearing held at Miami, Okla., on July 22nd, 1930, before Chairman Thos. H. Doyle; the claimant appeared in person and by his attorney, P. D. Decker, the respondent and insurance carrier being represented by Edgar Fenton and H. L. Palmer; and the Commission, after hearing the testimony taken at said hearing, examining all records and reports on file, and being otherwise well and sufficiently advised in the premises, makes the following findings of fact:

"(1) That on and prior to the 16th of December, 1929, claimant, J. Fisher, was in the employment of respondent R. H. Channing, Jr., et al., and engaged in a hazardous occupation subject to and covered by the provisions of the Workmen's Compensation Law.

"(2) That arising out of and in the course of such employment with respondent herein, claimant sustained an accidental personal injury on December 16, 1929, to his left arm, which resulted in the loss of the use of said arm to the extent of 50 per cent. permanent partial loss of use; and that he sustained a serious and permanent disfigurement in the nature of a scar over the left eye.

"(3) That said claimant was paid the sum of $9 for temporary total disability. And that said claimant's daily wage at the time of the accident was $5 a day.

"The Commission is of opinion: That said claimant is entitled to compensation for a period of 125 weeks for 50 per cent. of the permanent loss of the use of said arm, and to $100 for serious and permanent disfigurement to said claimant's forehead.

"It is therefore ordered: That within ten days from this date, the respondent, or its insurance carrier, pay to the claimant the sum of $100 for serious and permanent disfigurement, by reason of a scar above the left eye of said claimant.

"It is further ordered: That within ten days from this date, the respondent or its insurance carrier pay to the claimant the sum of $591, as compensation for 32 weeks and five days, computed from December 25, 1929, up to and including August 11, 1930, as compensation for 50 per cent. permanent loss of the use of said claimant's left arm, and continue the payment of compensation at the rate of $18 per week until the full 125 weeks has been paid.

"It is further ordered: That within 30 days from this date, the respondent or its insurance carrier file with the Commission receipts or other proper reports evidencing compliance with the terms of this order.

"Upon the adoption of the foregoing order the roll was called and the following voted aye: Doyle, Chairman,

"McElroy, C."

The petitioners in this case have filed a brief in which they complain of the award on the ground that there was no competent evidence to support it, subdividing the complaint into two parts, the first being as to the causal relation between the accident and the injuries. A large part of the testimony that was introduced on the trial is set out in the brief. Comment is made upon the attitude of the Commission towards the introduction of the testimony, and especially the testimony of the claimant, and the fact that the claimant was led very adroitly and fully by his attorney and by the Commission.

We have examined this record, and while it is true that it appears at times as though the witness and the attorney were very much in accord as to what the facts were, yet there is not much more in this than in the ordinary case. Frequently attorneys get into the habit of leading their witness in suggesting the desired answers. Notwithstanding this, however, the witness did say enough from which the Commission was justified in finding the causal relationship between the accident and the injuries.

There is a further complaint that it would require expert testimony to establish the disability. Of course, the Commission is but an administrative board, and it hears the testimony without regard to technical rules. This evidently was in the mind of the Legislature, when they provided for their appointment, as it did not require them to be learned in the law. However, in this case, it appears that the employer sent in a notice of the injury, which was received by the Commission on the 28th day of December, 1929, in which it reported that the claimant was a shoveler and had been in their employ for three or four years, and was earning $5 a day and the employment was a weekly one. It described how the accident occurred as saying:

"Was pulling Inc hst-cable hung up broke loose hitting him over left eye."

It further stated that medical attendance was provided through the medium of the American Hospital, Picher, Okla. The date of this was the 20th of December, 1929. There was no answer at the place inquiring if he had returned to work.

There was filed with the Commission, which was received on the 17th of February, 1930, an agreed statement of facts, in which it is stated that the injury occurred on December 16, 1929, and the disability ended December 25, 1929, and that the nature of the injury was "injured left shoulder and eye." There was a further statement that

the "Employee quit work 12-17-29. Employee returned to work 12-16-19," though evidently the latter date is a misprint.

It further stated that the average weekly wage was $30, and rate of compensation agreed on was $18, and $9 had been paid, and there was a period of disability of one week and three days. There was a further statement that $9 had been received. This was dated on the 14th of February, 1930, signed by the claimant and by the agent of R. H. Channing, Jr., and also by the insurance carrier, United States Fidelity & Guaranty Company.

On the 27th of February, 1930, there was received an employee's first notice of injury, and he gave the cause of the accident that the brake was out of order on tuger, and his shoulder and eye were hurt, and he quit work on account of the injury on December 16, 1929, and returned to work on December 26, 1929, and that the shoulder was smashed up and the injury was permanent.

With this state of affairs, the case was set down on the Miami docket to determine the extent of disability. On the day set the plaintiff appeared for examination and Mr. Decker appeared on his behalf, and Mr. Fenton appeared on behalf of the insurance carrier and the employer. Mr. Fenton admitted that the accident was not denied, and the question was the extent of the disability, and that the $9 total disability had been paid.

The claimant was called, and he related that the doctor told him to go back to work, and that exercise would help the shoulder, and he thought he went back to a job that he classified as no work, "riding rope," as he called it. He tried to shovel, but was not able to, and that a bump came on top of his shoulder, which hurt him when he moved his arm. He was permitted to give his conclusion as to the per cent. of his disability, and he estimated it at least one-half in the arm.

It appears that the claimant got a lick over the eye at the time he got the lick from the cable. He was bothered with the eye for two or three weeks, but it got so he could see out of it. It developed that the doctor at the hospital had put two "hog rings" in the wound over the eye. Two of the Commissioners examined the scar.

The claimant was cross-examined by the attorney for the insurance carrier, and the Commissioner reminded the parties of the fact that there was a stipulation in form No. 7 in which it was settled on the maximum of $18 per week, and ruled that the only

question before the Commission was the disability. An examination was had further on that part of it, being conducted by the attorneys and by the Commission itself. The claimant was required to exhibit his arm to show the limitation of motion in it, and he was asked about the pain and ability to use it.

A demurrer was interposed to the evidence, and was overruled. The attorney for the carrier stood on the demurrer. He failed to put in any proof, but excepted to the order overruling the demurrer.

Under the conditions stated here, the Commission made its award. The Legislature saw fit in a proceeding of this kind to prescribe that findings of the Industrial Commission as to facts were conclusive on us. We know of no rule that would enable us to declare this section of the statute nonoperative.

Some decisions of this court and other courts are cited, but we do not think they are controlling as applied to the matters that were before the Industrial Commission. Part of them were jury trials and some were industrial cases, but this case is determined by its own facts. The argument is made that the testimony in this case should have been that of scientific men, and that claimant was not competent to estimate his disability, and especially the percentage.

We recognize that a percentage of disability is merely an estimate after all. Experts are brought in because the triers frequently are not sufficiently informed, but in the course of time the average member of the Industrial Commission, by virtue of long observation, would recognize the malingerer as distinguished from the one that is actually hurt. Of course, we cannot feel the arm of the claimant in this case, or see his appearance and his demeanor, and under the law we are not authorized to take the place of the Industrial Commission, and we think, while perhaps the evidence in this case of permanent disability is not as clear as in some cases, still, under the law, the Commission was put there for the purpose of observing the injured people before them, and drawing conclusions of fact therefrom, and we are forbidden to set them aside because we might not draw the same conclusions that they did.

A bedsore case, and some miscarriage cases, and an occupational disease case are cited, but there is nothing in them that would appear to warrant a setting aside of the award in this case.

The Commission found in favor of the claimant. As to whether or not the injuries were subjective or objective, we do not deem it necessary to discuss, as everybody seems to concede that the claimant was hurt, and there seems to be no evidence that he was not scarred, and none that his arm was as good afterwards as before. The Commission was made the trier of that matter by law, and we are not authorized to disturb the award. It is accordingly affirmed.

LESTER, C. J., CLARK, V. C. J., and CULLISON and McNEILL, JJ., concur. RILEY, SWINDALL, and ANDREWS, J., dissent. HEFNER, J., concurs in conclusions.

RILEY, J. (dissenting). Only one witness, the claimant, testified before the Industrial Commission. Objections were made to his qualifications to testify as to matters of science.

The award was in the sum of $100 for serious and permanent disfigurement by reason of a scar above the left eye of claimant, and in the sum of $2,250 for 50 per cent. permanent loss of use of left arm. No witness testified that the disfigurement was either serious or permanent. To the contrary, the one witness, the claimant (who did not even claim compensation for serious and permanent disfigurement until it was suggested by the Commission) testified: "No sir, the eye is all right. It bothered me for two or three weeks." That testimony, in my judgment, shows that the disfigurement was neither serious nor permanent.

As to the loss of use of the left arm, the one witness, claimant, testified that, basing his calculation upon the amount of work he did after the accident and his pay therefor, with the amount of work he did before the accident and the pay he received therefor, his permanent loss of use of his left arm was 50 per cent. It is self-evident that such testimony established loss of use of that arm, but it is just as evident that such testimony did not establish permanency, that is, that such would be the loss next month or next year.

It is true that a member of the Commission viewed claimant's arm, and another member of the Commission was called to view the disfigurement, the record showing: "Judge Doyle: * * * It takes two Commissioners to view a disfigurement."

The majority opinion takes the view that the Commissioners are a kind of super-experts—superior to the extent that their qualifications as medical men or scholars of science need not be shown (but this court will take judicial knowledge of their qualifications) and that it is unnecessary to record what they view. The majority opinion reads:

"In the course of time the average member of the Industrial Commission, by virtue of long observation, would recognize the malingerer as distinguished from one that is actually hurt."

There is no issue of a malingerer here, so the only application is the one "actually hurt." Recognition of the hurt by the average member of the Commission is all that is necessary and recordation of what is recognized or qualifications in science to justify recognition of subjective symptoms is wholly unnecessary to the majority view, for there is not a syllable in the record as to what was found in the examination or "viewing" by the Commission, as bearing upon the permanency of the injuries (scar over eye and arm) of claimant. I cannot from the record find evidence to support the finding of permanency either as to the eye or arm.

It is the law that this court shall, upon application, review such orders and awards. It is the rule and statute that, if we find evidence to support the order and award, we will affirm, otherwise we will reverse them. I cannot make evidence out of an unrecorded result of a viewing by the Commission.

The procedure here involved, i.e., the presiding officer of a tribunal, be he judge or commissioner, giving evidence (even if evidence can be spelled out of a viewing) and then passing on or weighing the sufficiency of his own evidence, ought not be looked on with favor.

Under authority of Tulsa St. Ry. Co. v. Shoemaker, 106 Okla. 99, 233 Pac. 182; Asso. Emp. Reciprocal v. St. Indus. Comm., 83 Okla. 73, 200 Pac. 862; Shawnee-Tecumseh Traction Co. v. Griggs, 50 Okla. 566, 151 Pac. 230; Int. Coal Mining Co. v. Nicholos. (Ill.) 127 N. E. 703, 10 A. L. R. 1010; Okla. Hospital Co. v. Brown, 87 Okla. 46, 208 Pac. 785; St. L. M. & S. Co. v. St. Indus. Comm., 113 Okla. 179, 241 Pac. 170; St. L. & S. F. Ry. Co. v. Criner, 41 Okla. 256, 137 Pac. 705; Willett v. Johnson, 13 Okla. 563, 76 Pac. 174; Okla. Co., Inc., v. St. Indus. Comm., 148 Okla. 215, 298 Pac. 296; Shepard v. Crumby, 146 Okla. 118, 293 Pac. 1049, I dissent.

I am authorized to state that Mr. Justices Swindall and Andrews join in this dissent and the views herein expressed.