## SUPERIOR OIL CO. et al. v. SWIMMER et al.

No. 26799.  Sept. 8, 1936.

Miley, Hoffman, Williams, France & Johnson and Roy V. Lewis, for petitioners.

Leo J. Williams, M. J. Parmenter, and Mac Q. Williamson, Atty. Gen., for respondents.

PER CURIAM.  On the 11th day of December, 1929, claimant sustained an accidental injury which was caused by a fellow employee striking him on the head with a shovel. On the 6th day of December, 1930, an award was entered for a partial permanent disability due to such injury, and proceeding to vacate the award was begun and successfully prosecuted by the petitioners in an opinion styled Superior Oil Co. v. Swimmer, 156 Okla. 71, 9 P. (2d) 707. On May 4, 1932, by agreement of the parties a settlement was reached which was approved by the commission June 14, 1932. By this agreement and order claimant received $900.

On May 4, 1934, the claimant filed his motion to reopen the case because of change of condition. Five different hearings were held subsequent to the filing of this motion. On October 26, 1935, the commission entered the following order and finding, omitting the formal parts:

"1. That on the 11th day of December, 1929, claimant was in the employ of the respondent and engaged in a hazardous occupation subject to and covered by the provisions of the Workmen's Compensation Law, and that on said date he sustained an accidental personal injury, arising out of and in the course of his employment, received a fracture to the skull.

"2. That the average daily wage of the claimant at the time of the accidental injury was $5 per day.

"3. That claimant has been paid temporary total compensation from December 11, 1929, to April 14, 1930, less the five-day waiting period, or a total of 17 weeks, being the total sum of $306.

"4. That the claimant and the respondent entered into an agreement for the sum of $900. or 10 per cent. loss of vision in each

eye, and said agreement was filed with the State Industrial Commission May 4, 1932, and approved by the State Industrial Commission as evidenced by an order of the commission on June 14, 1932, subject to the continuing jurisdiction of the commission on a change of condition.

"5. That the claimant has suffered a change of condition for the worse as a result of said accidental injury, since the filing of order of June 14, 1932, and now has 80 per cent. loss of vision in each eye, or 70 per cent. additional loss of vision.

"The commission is of the opinion, that under section 7290, subdivision 1, Compiled Oklahoma Statues 1921, as amended by Session Laws of 1923, the loss of use of both members constitutes permanent total disability, for which compensation is provided under the law for a period of 500 weeks; that under section 7290, subdivision 4 for percentage loss of use of one member is provided for by that portion of the number of weeks provided in the schedule for the loss of a member, which the partial loss of use thereof, bears to the total loss of use of such member. That 80 per cent. loss of use of the left eye and 80 per cent. loss of use of the right eye, having an average, taking both numbers into consideration, of 80 per cent. loss of use of both eyes, or 70 per cent. loss of vision in addition to the 10 per cent. loss of vision in each eye, as evidence by order on Form 14, June 14, 1932, by the State Industrial Commission, and that claimant is entitled, under the law, to compensation at the rate of $18 per week for a period of 350 weeks which is in addition to 50 weeks for 10 per cent. loss of vision, which has heretofore been paid, as above set out; and that there is now due claimant the sum of $3,150. being 175 weeks' compensation at the rate of $18. computed from June 14, 1932, to October 25, 1935, and continue compensation at the above weekly rate until the sum of $6,300 has been paid, or 350 weeks compensation on account of 70 per cent. additional loss of vision of both eyes.

"It is therefore ordered: That within 15 days from this date, respondent or insurance carrier pay to the claimant the sum of $3,150, or 175 weeks' compensation, as above set out, and to continue the payment of compensation at the rate of $18 per week until 350 weeks, being the sum of $6,300 shall have been paid, on account of 70 per cent. additional loss of vision of both eyes on account of said accidental injury.

"It is further ordered: That $630 is a reasonable attorney fee of claimant's attorney, and that the same be and is hereby approved to be paid out of the award herein to attorney for claimant, Leo J. Williams, Oklahoma City, Oklahoma."

This proceeding was instituted to vacate this order and the petitioner has raised but two propositions, which it states as follows:

"Upon an application to reopen a case before the Industrial Commission the claimant has the burden of proof (A) that in fact there has been a change of condition since the original award, and (B) that the change of condition is due to the original injury."

Under the first specification it is stated:

"There is no competent evidence reasonably supporting the finding of a change of condition due to the accident of December 11, 1929, and the award based thereon is erroneous (assignments of error 1, 2 and 5)."

Upon such statement, therefore, it becomes evident that the sole question to determine is whether there has been a change of condition since the settlement May 4, 1932, approved June 14, 1932, and if there has been a change of condition, whether the change in condition results from the injury received by claimant December 11, 1929. Upon this point, on the hearing held May 31, 1934, Dr. Shelton, physician and surgeon, eye, ear, nose and throat specialist, testified that he examined claimant May 4, 1932, and found a manifest visual acuity of 20/30 in each eye, and at that time he found no pathological condition to account for the loss of vision complained of and could not state whether this loss of vision was permanent or temporary; that he again examined claimant on April 30, 1934, and found a macular degeneration with a true central scotoma in each eye; the media are clear, the tension, tunics, reflexes and muscular balance normal, manifesting a visual acuity of 20/200 in the left eye and approximately 20/300 in the right; near point limited to No. 11 Jaeger type. It was explained that a central scotoma meant a defect of vision in the central or main part of the eye and the above description of the visual acuity meant that claimant had a loss of vision of 80 per cent. in the left eye and 91.8 per cent. in his right eye; that said disability was due to or associated with either a lesion of the brain or of the optic tract and probably of traumatic origin; that it was permanent and might get worse and with that amount of loss of vision claimant would not be able to follow ordinary industrial occupations; that from his examinations he is of the opinion that the loss of vision results from the accidental injury of December 11, 1929. In response to a question on cross-examination by petitioner as to what the difference was in the disability in May, 1932, and April, 1934, the

doctor replied that when he made his examination in May, 1932, he was unable at that time to discover any pathological changes in the fundus, but in his examination of April, 1934, he found there was unquestionably what was a degenerating process of the macular region, and that this was the origin of the direct loss of vision. He further states that he examined claimant in July, 1935, and that his condition as compared to April, 1934, was identical. On June 18, 1935, Dr. Hicks also testified for the claimant, and gave as his opinion that claimant was suffering a loss of vision due to the accident of December 11, 1929.

The testimony of Dr. Shelton is clear and positive. The testimony of claimant as to the accident and a resulting disability is likewise clear and certain. We are asked to assume the probability of the injury having resulted from other causes than that of the accident of December 11, 1929. This is the particular province of the commission as a fact-finding body, and this court has many times held that where there is competent evidence to sustain the findings of the State Industrial Commission, its findings will not be disturbed, in a proceeding to vacate the award. Turner v. State Industrial Commission, 174 Okla. 486, 50 P. (2d) 668; Gulf Pipe Line Co. v. Keener, 162 Okla. 281, 20 P. (2d) 170; Century Indemnity Co. v. Chamberlain, 152 Okla. 158, 4 P. (2d) 79.

The duty of this court is properly performed when it makes a judicial inquiry as to whether there is any competent evidence to support the finding and award of the commission, and we have held in Sutherland Lumber Co. v. Roberts, 167 Okla. 646, 31 P. (2d) 581, that medical testimony based on employee's statement at the time of examination in compensation cases, although not made for the purpose of treatment, is competent. In addition to this we have the testimony of Dr. Shelton as above recited upon two examinations, the first immediately prior to the settlement June 14, 1932, and the last subsequent thereto.

Petitioners cite Kellogg v. Roe, 165 Okla. 112, 25 P. (2d) 302, as controverting the rule. That case held that a change in condition could not be proved by the sole statement of claimant. In the case at bar, there is competent evidence by medical experts of a change in condition. Petitioners also cite Barnes Const. Co. v. Hargrove, 167 Okla. 348, 29 P. (2d) 573. Therein we said:

"This court has held that when in an action for personal injury, the injury complained of is of such a character as to require skilled and professional men to determine the cause and extent thereof, the question is one of science, and must necessarily be proven by the testimony of skilled professional persons. Oklahoma Hospital v. Brown, 87 Okla. 46, 208 P. 785. Claimant's injury being subjective in its nature rendered claimant's testimony nothing more than a conclusion by one not competent to testify as to a conclusion based on facts requiring skill. Williams Brothers, Inc., v. State Industrial Commission, 158 Okla. 171, 12 P. (2d) 896."

It is true that more expert witnesses testified for the petitioners than for the claimant. In fact, seven qualified experts gave it as their opinion that nothing was wrong with claimant, and that if there was anything wrong it could not be due to a change in condition for the reason that it would have fully developed by June 14, 1932, considering the accident to have taken place in 1929. This testimony was directly controverted by Drs. Shelton and Hicks. In Briscoe Const. Co. v. Listerman, 163 Okla. 17, 20 P. (2d) 560, this court in discussing this proposition said:

"On page 1794, Schneider's Workman's Compensation Law, vol. 2 (2d Ed.) it is said:

"'The board is at liberty to refuse to give credence to any portion of the evidence which in its opinion is not entitled to credence nor are they required to give credence to the greater amount of evidence as against the lesser.'"

This rule has been consistently followed by this court. See Standard Roofing & Material Co. v. Mosley, 176 Okla. 517, 56 P. (2d) 847.

There remains one other statement by the petitioners to which we direct our attention, and that is that the claimant appeared before the commission on the same old claim made to Doctors Wails and Braswell in 1930, and which this court once rejected; referring, of course, to the opinion rendered in Superior Oil Co. v. Swimmer, supra. A reference to that opinion will show that the award was vacated because by the admission of Dr. Shelton himself the disability was not a permanent partial disability, but that the temporary disability had not ceased, and therefore no competent evidence was in the record supporting the award on the ground of permanent partial disability.

The award is affirmed.

McNEILL, C. J., OSBORN, V. C. J., and BAYLESS, PHELPS, and CORN, JJ., concur.