DIAMOND ICE CO. et al. v. SEITZ et al.

No. 29256.   Sept. 17, 1940.

Rehearing Denied Oct. 8, 1940.

*105 P. 2d 784.*

Butler & Rinehart, of Oklahoma City, for petitioners.

Fred M. Hammer and Major J. Parmenter, both of .Oklahoma City, A. L. Commons, of Miami, and Mac Q. Williamson, Atty. Gen., for respondents.

DANNER, J. This is an original proceeding brought by Diamond Ice Company, a partnership, and its insurance carrier, Casualty Reciprocal Exchange,

seeking to obtain a review of an award made in favor of Clarence S. Seitz, hereinafter referred to as respondent.

On the 11th day of February, 1938, Clarence S. Seitz filed employee's first notice of injury and claim for compensation, alleging that on December 21, 1937, he sustained an injury while in the employ of the Diamond Ice Company by falling from a scaffold onto a concrete platform. The nature and extent of disability are not in dispute.

On May 8, 1939, the State Industrial Commission entered its order and award finding that on the 21st day of December, 1937, the respondent while in the employ of Jim Maloch, engaged in a hazardous employment, sustained an accidental injury arising out of said employment. The order was later corrected in certain respects immaterial hereto. In said order it was further found that Jim Maloch was an independent contractor, and that he did not carry insurance or otherwise comply with the law as provided by the Workmen's Compensation Act, section 13351 et seq., O. S. 1931, 85 Okla. St. Ann. § 11 et seq., and that therefore the Diamond Ice Company, the principal employer, was secondarily liable. It is the latter portion of the award, holding the Diamond Ice Company secondarily liable, which petitioners seek to vacate.

The record shows that petitioner owned a two-story building and that it entered into a contract with one P. J. Cordes for the remodeling and repair thereof. The building had been acquired by the petitioner a short time prior to the date of the contract and the remodeling was for the purpose of fitting the building for occupancy by the petitioner for the manufacture and sale of ice. It had not theretofore been used for that purpose.

The original contract price for remodeling and repairing was $5,534.88, but from time to time during the progress of the work certain changes were made in the plans and the final contract price was approximately $7,500. Cordes (who was not by trade a plasterer) made arrangements with Jim Maloch to take charge of the plastering on the building, upon which it was contemplated, under the original contract, that only the lower floor of the building was to be stuccoed on the outside. Later petitioner decided to stucco the second story of the building. Clarence Page, one member of the partnership petitioner, discussed with said Jim Maloch, one of the respondents, about stuccoing the outside of the second story of the building. An agreement was reached between Page and Maloch whereby the work was to be done by Maloch for $650.

The commission found that this contract was separate and independent and not connected with or related to the original contract with Cordes. Petitioner contends that there is no competent evidence to sustain such finding, and that the evidence discloses that the agreement to stucco the second story of the building was merely an extension of the original contract with Cordes.

In support of the finding of the commission, the record shows that the injured employee was hired by Maloch; that such employee's wages were paid by Maloch, who also paid for the material used in stuccoing the second story of the building. It appears further from the record that the work of stuccoing the second story of the building was directed, supervised, and controlled by Maloch, free from any supervision, control, or direction of Cordes.

The latter carried compensation insurance and Maloch did not; therefore, if the contract herein involved was a separate, independent contract of Maloch, there would be no liability against Cordes or his insurance carriers.

The claimant was injured while placing stucco on the upper part of the building, while working under his employment by Maloch. There is some conflict in the evidence with regard to whether or not the original contract in respect to stuccoing the building, with Cordes, was separate and independent from the contract with Maloch. How-

ever, the record contains abundant competent evidence to support the finding of the commission that the work on the second story was done under a separate contract with Maloch; therefore, the finding of the commission on this point will not be disturbed. Shepard et al. v. Crumby et al., 146 Okla. 118, 293 P. 1049; Maryland Casualty Co. et al. v. State Industrial Commission et al., 148 Okla. 204, 298 P. 275; Curry v. State Industrial Commission, 182 Okla. 119, 76 P. 2d 899.

It is next contended by the petitioner that the commission erred in finding that in addition to the liability of Maloch, there was a secondary liability of the petitioner, Diamond Ice Company, and its insurance carrier. In support of this contention petitioner relies upon the rule announced in Standard Savings & Loan Co. v. Whitney, 184 Okla. 190, 86 P. 2d 298.

In that case the principal was a building and loan association, organized under the state laws and engaged in the business of accepting investments of shareholders and making loans on real estate security. It had entered into a contract for the sale of certain buildings which it had acquired through the process of foreclosure. An employee of the contractor sustained a compensable injury and sought to fasten liability upon the building and loan association under the provisions of the Workmen's Compensation Act. Under the facts there presented this court held that since the principal employer was not engaged in the business of repair of the buildings for pecuniary gain, section 13351, O. S. 1931, 85 Okla. St. Ann. § 11, supra, fixing secondary liability against the employer for failure to effect a compliance with the Workmen's Compensation Act by the contractor, was not applicable. To the same effect is the case of Haas v. Ferguson, 184 Okla. 279, 86 P. 2d 986, wherein the principal employer was a retail clothing merchant and had entered into a contract for the construction of a dwelling house for his own use and occupancy. In addition, reference is made to the case of Meyer & Meyer v. Davis, 162 Okla. 16, 18 P. 2d 869, where the principal employer was engaged in the business of operating a mortuary. See, also, Anderson v. Last Chance Ranch Co., 63 Utah, 551, 228 P. 184; Blakely v. Hamby et al., 187 Okla. 251, 102 P. 2d 581.

We are not convinced that the cases relied upon by petitioner are controlling under the facts in the record here. We are persuaded that, under the record here, we may not consistently deviate from the rule stated by this court in Green v. State Industrial Commission et al., 121 Okla. 211, 249 P. 933. In that case Green, the petitioner, was the owner of an oil and gas mining lease on certain real estate. He entered into a contract with one R. L. Hancock to drill a well on the lease, for which he agreed to pay Hancock $2,250 cash and to give him an eighth interest in the lease. While Hancock was engaged in drilling the well one of his employees received personal injuries for which he applied to the State Industrial Commission for compensation under the Workmen's Compensation Act. The commission found that the injured employee was in the employ of Hancock; that Green, the petitioner, had failed to require a compliance with the compensation provisions of the Workmen's Compensation Act. This court sustained the finding of the Industrial Commission, holding that Green was secondarily liable to the employee for the compensation awarded. In the body of the opinion we said:

"If Green was not to be held liable in case he did not require Hancock to carry insurance, why does the act give him the privilege of canceling his contract with Hancock, and why does the act give him the privilege of withholding from Hancock a portion of the contract price for drilling the well? Since the act gave him the privilege of requiring Hancock to carry the insurance and he failed to do so, are we to say that the injured employee is to be the sole sufferer? It does not require an undue exercise of one's imagination to contemplate a case wherein the party in Hancock's position would be financially irresponsible, and in such case, are we to say that the one in Green's position shall also escape and

allow the injured employee to suffer the consequences? Such a construction, in our judgment, would make a mockery of a law designed to be of untold benefit. Counsel in their briefs, as supporting their respective contentions, cite adjudicated cases from Massachusetts, Vermont, and Illinois, but an examination of such authorities show that they are based upon a statute so differing from ours that they are worth but little to us in reaching a proper solution of the question here presented."

See, also, Tahona Smokeless Coal Co. v. State Industrial Commission, 128 Okla. 188, 261 P. 941; Tahona Smokeless Coal Co. v. State Industrial Commission, 134 Okla. 150, 274 P. 16.

In the present case Maloch was remodeling and repairing a building to be used and occupied by petitioner in furtherance of and incident to its business of manufacturing ice, which business is defined as hazardous by the Workmen's Compensation Act, section 13349, O. S. 1931, 85 Okla. St. Ann. § 2, and section 13350, O. S. 1931, 85 Okla. St. Ann. § 3. Purkable v. Greenland Oil Co., 122 Kan. 720, 253 P. 219. Appropriate here is the language used by the Supreme Court of New York in Re Larsen v. Paine Drug Co., 218 N. Y. 252, 112 N. E. 725, wherein it is said:

"Appellants' second proposition means that a person engaged generally in an employment which has been defined as hazardous cannot recover compensation for injuries received while performing some act not immediately connected with what might be deemed the hazardous and characteristic feature of the business, although such act was incident to the employment and necessary in prosecuting and carrying forward the business. To illustrate, in the present case it means that no award can be made because the employee was injured while building a shelf for use in the business, rather than engaged in the immediate process of manufacturing drugs and chemicals, although such shelf was entirely necessary in the prosecution of the business. We think this is too narrow a view of the statute, and would lead to limitations upon its application which were not intended or anticipated by the Legislature. It is not necessary to

attempt to lay down a final and universal rule on that subject. We feel perfectly secure, however, in holding that where, as in this case, an employee is injured while performing an act which is fairly incidental to the prosecution of a business and appropriate in carrying it forward and providing for its needs, he or his dependents are not to be barred from recovery because such act is not a step wholly embraced in the precise and characteristic process or operation which has been made the basis of the group in which employment is claimed."

In Heber Harding v. Industrial Commission of Utah, 83 Utah, 376, 28 P. 2d 182, 91 A. L. R. 1523, it is held:

"An employee injured while performing an act which is fairly incident to the prosecution of the business, trade, or occupation of the employer, and appropriate in carrying it forward and providing for its needs, is not to be barred from the benefits of workmen's compensation because the act is not wholly embraced in the precise characteristic process or operation made the basis of the group in which employment is claimed. (See 28 R. C. L. 716.)"

Appropriate is the case of Durett v. Woods, 99 So. 430, decided by the Supreme Court of Louisiana. In that case the injured employee was engaged by the defendant as a teamster, doing hauling in the oil fields. The Workmen's Compensation Law of that state included the provision relating to the operation, construction, removal, maintenance, and demolition of certain trades, businesses, and occupations which were defined as hazardous. The defense there was that the business in which the defendant was engaged and for which the plaintiff (employee) was employed was not hazardous, and did not come within any of the trades, occupations, or businesses designated and defined in the compensation statute. In deciding adversely to the claims of the defendant the court said:

"The defendant had nothing to do with drilling of an oil or gas well, nor with the construction, erection, maintenance, repair, operation, or demolition of oil and gas wells, nor with the placing or laying of pipe, nor with the erection of the derricks; but his business did include

the hauling of logs, timber, and lumber, and drill rigs, and the placing of same on the ground, and the hauling of machinery and appliances to be used in connection with the erection and opera-tion of oil and gas wells; and that was his exclusive business in the oil fields. It goes without saying that no oil or gas well could be constructed and operated without the logs and timbers for the derrick and without the machinery and other appliances. Therefore, the furnishing of same and the placing of same upon the location for the well was to all intent and purpose the initiation, the beginning, and a part of the construction and erection and putting in operation of an oil well within the meaning of the statute. * * *

"Again we repeat in this connection that it is placing too strict a construction and too narrow a limitation on the statute to say that the workman who delivered the engine and boiler on the ground was not within the terms of the statute, while the workman who immediately proceeded to install the engine and boiler was embraced therein."

In the body of the opinion in Purkable v. Greenland Oil Co., supra, the court said:

"The company criticizes the findings of the court with respect to nature of the company's business. The criticisms need not be discussed. It is not disputed that, as the court found, the company was engaged in the business of developing land covered by oil and gas leases, and was producing oil and gas therefrom. It was admitted at the trial that the company owned the leases on which the derrick stood which Hedges was erecting. It is not disputed that, as the court found, the company was engaged in drilling oil and gas wells on the lease, and was producing oil therefrom. It was admitted at the trial that the work of drilling a well, to which building of the derrick was an incident, was being conducted by the company. Aside from the fact that the subject is one of common knowledge, it was a fair inference from the testimony and the admission that, as the court found, an oil well derrick is a part of the necessary equipment for drilling an oil well, and construction of such a derrick is a part of the business or work of drilling an oil well. The result is, the business of the company was operating for and producing oil, the work of build-ing the derrick was a part of its business, and the accident occurred on premises on which the company had undertaken to execute work under its management and control and a part of its business."

See, also, Empey v. Industrial Commission of Utah, 91 Utah, 234, 63 P. 2d 630.

The court is committed to the rule that the provisions of the Workmen's Compensation Act are remedial in nature and should be liberally construed in favor of the employee when injury arises out of and in the course of employment. McGeorge Corporation v. State Industrial Commission, 180 Okla. 346, 69 P. 2d 320; Oklahoma Gas & Electric Co. v. Hunsicker, 178 Okla. 565, 63 P. 2d 21; Smith & McDonald v. State Industrial Commission, 133 Okla. 77, 271 P. 142.

From a careful consideration of the record, we conclude that the award of the commission should be sustained; to hold otherwise would effectively remove from the Workmen's Compensation Act those vital precepts and principles which are fundamentally and substantially a part of it.

The award is sustained.

RILEY, OSBORN, CORN, and HURST, JJ., concur. DAVISON, J., concurs in conclusion. BAYLESS, C. J., and WELCH, V. C. J., dissent. GIBSON, J., absent.