Debra Kaye MURPHY, Administratrix of the Estate of Jesse Houston Murphy, Deceased; and Debra Kaye Murphy, Individually and as Next Friend and Mother of Tina Michelle Murphy, and Bobby James Murphy, Minors, Appellants,

v.

CHICKASHA MOBILE HOMES, INC., a Corporation, Appellee.

No. 51630.

Supreme Court of Oklahoma.

May 6, 1980.

244

Kent F. Frates, Ellis, Frates & Shotts, Victor G. Hill, Jr., Oklahoma City, for appellants.

James M. Robinson, James S. Drennan, Monnet, Hayes, Bullis, Thompson & Edwards, Oklahoma City, for appellee.

OPALA, Justice:

The issue on certiorari is whether the "hirer" of an independent building contractor was the "principal employer" within the meaning of 85 O.S.1971 § 11 which casts secondary liability for payment of compensation benefits upon indirect or remote employers. We hold that under the *Atkinson*[1] "necessary-and-integral" test, the record before us is insufficient for a meaningful determination of hirer's § 11 status as the statutory employer.

A principal employer, within the meaning of the compensation law, must be defined in terms of the task for the performance of which he hired the independent contractor. Proper application of the test requires a two-step consideration: [1] the task being performed by the worker, when injured, must be necessary and integral part of hirer's day-to-day business operations or [2] one that is within the range of activities customarily carried out by one in the hirer's line of business. If the contractor, however independent he may be, is merely a medium through whom the hirer is

1. *W. P. Atkinson Enterprises, Inc. v. District Court*, Okl., 516 P.2d 541 [1973].

pursuing the day-to-day activity of his own business, § 11 status is created by operation of law and compensation liability attaches.

The administratrix of the estate of Jesse Murphy [worker] brought a wrongful death action against Chickasha Mobile Homes, Inc. [owner]. The worker was killed at the owner's facility—a manufacturing plant. He was then in the employ of Apollo Building Systems, Inc., an independent building contractor [contractor], who was in the process of erecting, pursuant to a contract with the owner, a metal addition to an existing plant building at owner's premises. While plugging an electric screwdriver into an extension cord furnished by owner, worker became exposed to electrical current and suffered extensive injuries. He died a short time after the accident.

The administratrix alleges that owner was negligent in supplying for worker's use a plug and cord which had been dangerously altered. The trial court sustained owner's "motion to dismiss," ruling that the cause of action sought to be litigated was abrogated by the Workmen's Compensation Law.[2] Owner's secondary liability as statutory employer within the purview of § 11, reasoned the court, made it immune from the common-law tort action. The Court of Appeals affirmed. Administratrix seeks certiorari.

At the heart of the dispute is the contractor's status *vis-a-vis* the defendant-owner. If the latter fits the description of a principal (statutory) employer, within the meaning of § 11, he is secondarily answerable in compensation for injury or death occurring in activities that are a necessary and integral part of the owner's business. If this be true, the instant action does not lie. But if owner is not a principal employer, then he is subject to tort liability preserved by § 44.

This area of law has been marked by several decades of rather discordant decisions. Our most recent effort to articulate the correct test for ascertaining who is principal employer under § 11 was in *Atkinson*.[3] There we abandoned the remaining vestiges of the "pecuniary gain" analysis to lay down the so-called "necessary and integral" test by which to measure the hirer's secondary liability for the activities of his independent contractor.

Under the pre-*Atkinson* application of the "necessary and integral" test extant case law accorded a hirer the statutory employer's status under § 11 in those cases where hirer's contractor was engaged in [1] the repair and maintenance of hirer's business premises,[4] [2] the moving of hirer's equipment or manufactured goods from one location to another,[5] and [3] the performance of tasks representing temporarily expanded activity beyond hirer's day-to-day business operations.[6]

2. 85 O.S.1971 §§ 12 and 122; all section references in the text are to 85 O.S.

3. *W. P. Atkinson Enterprises, Inc. v. District Court,* supra note 1; in *Atkinson* we said that the "pecuniary gain" test, sought to be applied by the injured worker, was applicable not to determine who is principal employer but whether the immediate employer is liable in compensation.

4. The repair of bindicators in hirer's feed mill and warehouse, *Sumpter v. Lawton Coop. Ass'n,* Okl., 384 P.2d 908 [1963]; the repair and remodeling of hirer's buildings used to house his business, *Diamond Ice Co. v. Seitz,* 188 Okl. 54, 105 P.2d 784 [1940]; plastering of building being constructed for hirer's dairy plant and store, *Preferred Accident Ins. Co. v. Van Dusen,* 202 Okl. 124, 210 P.2d 341 [1949]; repair and reconstruction of large metal sign located in front of hirer's place of business, *McDuffie v. Nash Neon Sign Co.,* 202 Okl. 568, 215 P.2d 839

[1949]; welding of oil rig A-frame used in hirer's drilling business, *Baldwin v. Big X Drilling Co.,* Okl., 322 P.2d 647 [1958]; draining of hirer's petroleum storage tanks for cleaning, *Skelly Oil Company v. District Court,* Okl., 401 P.2d 526, 528 [1964].

5. The moving of rig equipment from one location to another, *Creighton v. District Court of Seminole County,* Okl., 359 P.2d 581, 583 [1961]; transporting of oil from hirer's refinery, *Sun Oil Co. v. Martin,* Okl., 541 P.2d 841 [1975]; moving and relocating of existing power lines for hirer/public utility company, *Dunn v. Public Service Co.,* Okl., 487 P.2d 711 [1971].

6. Furnishing of labor to complete pipe-fitting work on plant construction project for hirer/oil refining company, *Jordon v. Champlin Refining Co.,* 200 Okl. 604, 198 P.2d 408 [1948]; cleaning out dirt in cattle guard by well servicing independent contractor for hirer/oil company, *Lee*

In some of these cases the work performed by the contractor was deemed necessary and integral part of the hirer's business because, in some way, it tended to facilitate the continued operations of his business. The work so done by the contractor, though oftentimes totally unrelated to the line of business carried on by the hirer, was nonetheless held necessary and integral part of it where the tasks performed could be somehow interconnected, however remotely, with the uninterrupted functioning of the hirer's business.

*Evans Oil & Gas Co. v. Superior Court*, Okl., 344 P.2d 670 [1959]; furnishing of labor on construction project for hirer/real estate company, *Glenwood Properties Corp. v. Walker*, Okl., 491 P.2d 286 [1971].

7. The result in some of the cases was influenced by the pecuniary gain test which no longer obtains. In these pre-*Atkinson* cases the court felt that anything which the business did to advance its pecuniary gain was necessary and integral. Now that we no longer recognize a pecuniary-gain factor, these cases cannot be regarded as correct in their exposition of the applicable law. [a] In *Standard Savings & Loan Ass'n v. Whitney*, 184 Okl. 190, 86 P.2d 298 [1939] a savings and loan association/hirer foreclosed mortgages on several homes and engaged a contractor to make repairs. Hirer was not deemed secondarily liable in compensation because it was not in the business of repairing buildings for "pecuniary gain" and hence had no legal obligation to require the contractor to comply with the act. A similar factual situation arose 7 years later in *Denbo v. Roark*, infra note 10, where the "pecuniary gain" test was applied to reach the very opposite conclusion. [b] In *Thompson v. Kiester*, 141 Okl. 69, 283 P. 1018 [1930] we first began asking the right questions for application of the "necessary and integral" test, but in those pre-*Atkinson* days we could not apply the test free of its pecuniary-gain distortions. In *Thompson*, 283 P. at page 1020, we said that the true test of § 11's applicability is: "Did the work being done pertain to the business, trade, or occupation of the defendant, *carried on by it for pecuniary gain*? If so, the fact that it was being done through the medium of an independent contractor would not relieve the defendant from liability." [Emphasis supplied]

8. [a] The necessary and integral test appears to have been applied in some post-1955 but pre-*Atkinson* cases without admixture of the pecuniary gain analysis. In *Creighton v. District Court of Seminole County*, Okl., 359 P.2d 581 [1961], an employee of an independent contractor, injured while moving rig equipment of the hirer [drilling company], was deemed to be

For the most part the cases which represent our past expressions are neither readily reconcilable nor capable of being arranged according to some definable categories. Any effort to classify them would likely fail. We shall not attempt the task. The conflict that is apparent from these pronouncements may be attributed to [1] the long period during which two different and not always consistent tests were being applied—pecuniary gain [7] and the necessary-and-integral-part analyses,[8] [2] our subconsciously persistent pursuit [even af-

engaged in an activity which was an integral part of the hirer's business. In *Aycox v. Pepsi Cola Bottling Company*, Okl., 331 P.2d 367 [1958], an employee of an independent contractor, injured while moving equipment of hirer's [bottling company], was not deemed engaged in an activity necessary and integral to the operation of the hirer—a soft drink distributor. In *Baldwin v. Big X Drilling Co., Inc.*, supra note 4, independent contractor's employee was injured while repairing hirer's [drilling company] rig. The rig repair was deemed an integral part of hirer's business because hirer would be unable to continue drilling unless the rig were in proper working condition. In *Sumpter v. Lawton Cooperative Association*, supra note 4, the repair of certain feed mill equipment [bindicators] used in hirer's business was held necessary and integral part of its operations. In both *Baldwin* and *Sumpter* the equipment under repair was used in the business operations. The cases differ slightly in that the feed mill business could operate for some time without repairing the bindicators while the drilling well business could not. [b] In *Diamond Ice Co. v. Seitz*, supra note 4, the repair and remodeling of a building by a contractor to be used in hirer's ice business was held to be a "necessary and integral" part of the hirer's business. The reason for *Seitz's* apparent inconsistency with other cases applying the test is that it is affected by the infusion of the "pecuniary gain" factor. In *Seitz* we said that the building would be used in the "furtherance of" and "carrying forward" of the business—and hence for the pecuniary gain of the principal employer. [c] The *Seitz* reasoning was also applied in *Preferred Acc. Ins. Co. of New York v. Van Dusen*, supra note 4. There we held that the construction of a new building to house the principal employer's hazardous business was incidental to and connected with the business. The pecuniary gain factor was dispositive of this conclusion. We said that the principal employer would not have built a new building had it not anticipated that it would improve the business and result in additional profit. [d] Both the pecuniary gain and the necessary-and-

ter the 1955 amendment of § 11 redefined statutory employer][9] of notions associated with the 1923 version of § 11, which, while in effect, appeared to extend the hirer's secondary liability, in a most sweeping phrase, to "*any contract* with an independent contractor"[10] and, lastly, [3] the fact that some of our cases were decided before the existence of contingent secondary liability for payment of compensation came to be recognized as a ground for tort immunity.[11] The decisional law may also have been influenced by excessive judicial fear of leaving an independent contractor's employee completely without any benefit of coverage under the compensation law. Before the 1977 amendments became enacted, the "laundry-list" of covered "hazardous" employment included only a trickle of the total industrial and business life in the state.[12] The rest of the workers were left unprotected. As late as 1940 the "necessary and integral" test of *Atkinson* had not yet been fully evolved and the court seemed still impressed with the seemingly open-ended language of the 1923 version of § 11. While some cases reflected an attempt at limiting § 11's application by resort to variously verbalized standards,[13] it was not un-

integral tests were applied in *Amerada Petroleum Corporation v. Vaughan*, 200 Okl. 226, 192 P.2d 639 [1948]. There the "hirer" failed to qualify as a principal employer under either application. The approach we followed in *Amerada* is unique in that both tests appeared to have been applied independently of each other. Hirer was an oil company which engaged an independent contractor to paint its company-owned and employee-occupied houses. Hirer was held to be neither engaged in the rental of houses for pecuniary gain nor was the painting project deemed to be a necessary and integral part of hirer's business pursuits.

9. Okla.Sess.L.1955, c. 2a, § 1.

10. Okla.Sess.L.1923, c. 61, § 3; [a] In *Denbo v. Roark*, 196 Okl. 386, 164 P.2d 977 [1946], an insurance contract had a provision that would allow the insurer to elect whether to pay a cash indemnity for property damage or to do the repairs. Insurer elected the latter. An employee of the contractor hired by the insurer to do the repairs was injured on the job. In this case we intermixed the broad 1923 test of secondary liability with the pecuniary gain analysis. The insurer, though not in the business of repairing buildings, was deemed to be a statutory employer for "pecuniary gain" because it had elected to do the repairs and had engaged a contractor to do the work. The rationale for this decision was explained in *Preferred Acc. Ins. Co. of New York v. Van Dusen*, supra note 4. There we said that the insurer's nonhazardous business of writing insurance was rendered hazardous [and thus an employment covered by the act] by the election to repair the damaged building—an activity done for pecuniary gain. We apparently gave further support to this rationale in *Glenwood Properties Corporation v. Walker*, supra note 6, when we said that the pecuniary gain factor "is important only in cases where the principal is engaged in a nonhazardous business, not compensable under the general provisions of the statute." [b] Four years after *Denbo* in *McDuffie v. Nash Neon Sign Co.*, supra note 4, we once again applied the 1923 secondary liability test by holding that if a hirer was engaged in a hazardous business [service garage] and his independent contractor was also engaged in a hazardous business [repairing signs], the hirer is secondarily liable under § 11. The pecuniary gain test however was ignored. The *dissent* stated that § 11 status should be made dependent upon the independent contractor's engagement in an activity for the principal hirer's pecuniary gain. [c] These examples clearly demonstrate how our vision came be to be blurred in resolving the problem of a hirer's status as a remote statutory employer. *Denbo* and *Neon Nash* are further evidence that there is no possibility for a meaningful "necessary and integral" test application when the pecuniary gain factor is infused in determining whether the work being performed for the hirer is necessary and integral to the business.

11. *Mid-Continent Pipe Line Co. v. Wilkerson,* infra note 13.

12. Cited case law was fashioned when coverage stood limited to the § 2 laundry list. Since the 1977 amendment to § 2, coverage is near-universal and we need no longer be concerned about leaving workers without the benefit of coverage. Okla.Sess.L.1977, c. 234, § 3. Exemptions from coverage are found in § 2.1 [okla.Sess.L.1977, c. 234, § 3] and §§ 2.2, 2.3 [Okla.Sess.L.1979, c. 210, §§ 5, 7].

13. [a] *Chickasha Cotton Oil Co. v. Strange*, 186 Okl. 136, 96 P.2d 316 [1939] was one of the earlier cases circumscribing § 11 status to certain types of contract. There we attempted to limit secondary liability to that work of the independent contractor which was "part" or "process" of the business, trade or occupation of the principal employer. *Warr Lumber Co. v. Henry*, 188 Okl. 619, 112 P.2d 358 [1941] was another attempt to confine compensation liability under § 11 to work contracts and exclude

til *Atkinson* that we were able to give an articulate recognition to the long-existing statutory verity *that § 11 does not operate to make every hirer of an independent contractor liable for compensation to the latter's employees.* *Atkinson*, a significant link in the chain of case-law development, first brought to our jurisprudence much needed conceptual consistency.[14] Its teaching is of even greater significance now since compensation law's coverage has been extended by the 1977 amendments to a near-universal sweep.[15] What remains for us to do here is to point the way to a meaningful implementation of *Atkinson* by a proper application of its essence which is free from the encrusted complexities left behind by the pecuniary-gain test's distortions of yesteryears.

■ For a distortion-free determination of hirer's status as statutory § 11 employer under the "necessary-and-integral" test, we fashion here a helpful two-part task-related standard. Tasks performed by an independent contractor are "necessary and integral" part of the hirer's operations within the meaning of the test when they [1] are directly associated with the day-to-day ac-

tivity carried on by the hirer's line of trade, industry or business or [2] would customarily be done in that line of business. The activities encompassed by the contractual relationship of the statutory employer and the skills needed for their performance must necessarily be germane to, and considered part and parcel of, that employer's day-to-day business operations.

What constitutes a necessary and integral part of the employer's business may often constitute a disputed issue of law or fact—because of [1] the different factual characteristics that may arise in every case, [2] the diverse categorical and individual characteristics of management practices and customs in effect within a given industry, trade or business and [3] incidental legal factors such as those that may be present when public utility operations are under consideration.[16]

■ This case appears to have been decided on the basis of an overbroad construction of § 11. The trial court's ruling on motion to dismiss had not been preceded by a proper, test-related examination of undisputed facts relevant and material to the issue of whether in the owner's business

---

therefrom supply contracts. There a lumber company, furnishing supplies to its contractor and extending credit therefor, was held not secondarily liable under § 11. In *Warr* we said that secondary liability could not be extended to a party whose quantum of interest in the work under performance was insufficient to constitute him a hirer under § 11. This rationale was also followed in *Oklahoma Oil Corporation v. Tuttle*, 187 Okl. 467, 103 P.2d 516 [1940]. [b] The question asked in these early 1940 cases was: "Is the party sought to be liable for compensation obligated under § 11 to provide insurance [for workmen's compensation liability] for employees of his independent contractor?" If the response was yes, then the hirer was immune from tort liability. In *Mid-Continent Pipe Line Co. v. Wilkerson*, 200 Okl. 335, 193 P.2d 586 [1948], a different question was asked of the hirer: "Are you secondarily liable?" The question was basically the same, but asked in a slightly different way. We held in *Wilkerson* that employers with contingent secondary liability are immune even though their liability may never be involved because persons primarily liable were adequately insured. *Wilkerson* settled as a ground for tort immunity the principal employer's secondary liability. [c] Our difficulty in trying to reconcile these

cases has been caused by [1] the fact that in pre-1955 cases the questions asked were not the same and [2] after the 1955 amendment of § 11, we appeared to unconsciously follow the no-longer effective 1923 version of that section which appeared to fasten principal employer's status to the hirer of every independent contractor if the hirer was in hazardous business.

14. The Court of Appeals' opinion by Brightmire, J., recognized in the instant case the post-*Atkinson* vacuum and the difficulty in isolating "harmonizing characteristics" in the 50-year accumulation of case law.

15. Workers' Compensation Act, Okla.Sess.L. 1977, c. 231, § 1 et seq.

16. A public utility which hires construction work done by an independent contractor could be liable for compensation to all remote employees because it may be regarded as having a nondelegable duty with respect to the maintenance of its plant, equipment and facilities. See for instance, *Lessley v. Kansas Power and Light Co.*, 171 Kan. 197, 231 P.2d 239 [1951] and *Hataway v. Proctor & Gamble Manufacturing Co.*, 195 Kan. 335, 405 P.2d 350, 352 [1965].

[manufacturing mobile homes] the construction of a metal addition to its plant may be viewed as [a] work associated with the day-to-day operations or customarily performed in that line of business or [b] one that represents an unrelated activity to be procured through an independent contractor with different, specialized skills in another line of business endeavor. The opinion of the Court of Appeals is hence vacated, the trial court's judgment reversed and this cause is remanded with directions to redetermine, consistently with the standards here announced, whether the owner [a] occupied the status of a statutory employer of plaintiff's decedent, within the meaning of § 11, and hence was not subject to tort liability or [b] was unprotected by the shield of immunity afforded by §§ 12 and 122 to one who bears contingent secondary liability under the Workers' Compensation Act.

IRWIN, V. C. J., and WILLIAMS, HODGES, BARNES, SIMMS, DOOLIN and HARGRAVE, JJ., concur.

LAVENDER, C. J., dissents.