**Bill FLOYD, Appellant,**

v.

**NATIONAL STEEL CORPORATION, and F–B Truck Line, Co., Appellees.**

**No. 53689.**

Court of Appeals of Oklahoma, Division No. 2.

March 17, 1981.

Rehearing Denied April 8, 1981.

Certiorari Denied May 18, 1981.

Released for Publication by Order of Court of Appeals May 21, 1981.

Lawrence A. Johnson, Tulsa, for appellant.

Alfred B. Knight, John Howard Lieber, Knight, Wagner, Stuart & Wilkerson, Tulsa, for appellees.

BOYDSTON, Judge.

This appeal is from the dismissal of a personal injury action filed by Bill Floyd (hereinafter referred to as employee) against F–B Truck Line Company (hereinafter referred to as trucking company).

Employee was working for National Steel Service Center, Inc., (hereinafter referred to as Service Center) unloading steel which had been transported by trucking company, an independent contractor, for National Steel Corporation (hereinafter referred to as National Steel) which is also a defendant in this action. Service Center provides a warehousing and sales outlet for steel products.

On June 12, 1978, while unloading a shipment of steel plaintiff stepped into a concealed hole on trucking company's truck bed and broke his leg. Employee filed a workman's compensation claim, reserving his right to pursue third party action against trucking company and National Steel.

Trucking company and National Steel individually filed motions to quash and pleas to district court's jurisdiction alleging employee's exclusive remedy is workman's compensation. This is based on a claim that the action was barred because both trucking company and National Steel were performing work which was a necessary and integral part of the business of Service Center. Under the rules of the district court [1] both trucking company and National Steel filed briefs with their motions. Employee failed to file a brief. The trial court sustained the motions to quash and dismissed the case. One day before this appeal was filed, employee confessed National Steel's motions and requested trial court to reconsider its earlier ruling in favor of trucking company. Trial court refused and employee appeals.

Employee raises the single issue whether trial court erred in finding trucking company was performing work that was a necessary and integral part of Service Center's business thus barring the third party action by reason of worker's compensation statutes.

Trucking company's reply brief raises the counter proposition that employee, not having filed an answer brief at trial level, is excluded from questioning the trial court's decision on appeal.

The facts on which the court ruled are uncontroverted. Therefore, we accept them as true for the purpose of settling this jurisdictional dispute.

The trial court held the independent trucking company was insulated from third party negligence actions [2] by reason of the fact that they were engaged in delivering steel to Service Center when the accident occurred and this was a "necessary and integral" part of Service Center's business. We do not agree.

The deceptively simple statement of the issue disguises a perplexing legal problem which historically has proven to be difficult to resolve.

■ The Worker's Compensation Act [3] (hereinafter referred to as Act) obligates employers and their independent subcontractors to pay worker's compensation to injured employees. It also permits injured employees to collect from *any* higher level of the contracting hierarchy in the event his own personal employer fails to comply with the Act—provided the employee is *engaged in the general employer's business.*[4]

■ Section 44 reserves the right of injured employees to sue non-employers in tort. Sections 12 and 122 declare the employee's worker's compensation remedy to be exclusive against his employer and *any other secondarily liable employers.* This "exclusivity of remedy" thus creates "tort-liability insulation" between the injured employee, his personal employer, fellow employees and *any other* potential tort defendant whose business activity fits the definition of "secondary employers." [5]

1. Rule 10 of the Rules of the District Court of Tulsa County.

2. Implicit in this ruling is the conclusion that trucking company is secondarily liable to employee for workers' compensation benefits.

3. Title 85 O.S. § 1 *et seq.*

4. This statutory scheme works smoothly in the construction industry which validly contemplates a primary contractor performing his work through various levels of subcontractors. Problems arise however when attempts are made at applying those same legal rules to third party negligence actions arising out of fixed based industries.

5. Typical of the facts in the instant case, the third party defendant-employer is often cavalierly unconcerned about adverse financial implications inherent in declaring itself to be a secondarily obligated workers' compensation insurer. In all ordinary conceivable factual situations, where employee seeks to avoid § 12 exclusivity some other employer has already been declared to be obligated. This is especially true where employee is in a fixed-base industry, such as employee in the case at bar and probably the majority of all modern compensation claimants.

One can imagine the indignant response from the common carrier industry if the courts even suggested each common carrier was liable for worker's compensation for *all* dockworkers of *all* of their customers. Yet that would be the net result if we held in conformance with trucking company's position.

The highly transitory nature of the construction industry and the well known proclivity of sub-contractors to hover near the edge of insol-

The difficulty which the courts have experienced in this area arises because of the dual and mutually inconsistent objectives of the employee; i. e. (1) the situation where employee asserts a negligence claim against a nonemployer third party and (2) where employee seeks compensation coverage against an alleged "secondary employer." These divergent aims create a dilemma which defies a single rule formulation that will accommodate both objectives.

The statutory scheme is simple and straightforward. The complexity of interpretation, however, has, until recently, been mired in conflict.[6]

In *Murphy v. Chickasha Mobile Homes, Inc.,* 611 P.2d 243 (Okl.1980),[7] the court restated the overall proposition:

> At the heart of the dispute is the contractors-status vis-a-vis the defendant-owner. If the latter fits the description of a principle (statutory) employer, within the meaning of § 11, he is secondarily answerable in compensation for injury or death *occurring in activities that are a necessary and integral part of the owner's business.* If this be true, the instant action [third party tort] does not lie. But if owner is not a principle employer, then he is subject to tort liability preserved by § 44. (emphasis added)

It went further to set forth a "task" related standard to aid in the determination of employer's status under § 11:

> Tasks performed by an independent contractor are 'necessary and integral' part of hirer's operations within the meaning of the test when they [1] are directly associated with the day-to-day activity carried on by the hirer's line of trade, industry or business or [2] would customarily be done in that business. The activities encompassed by the contractual relationship of the statutory employer and the skills needed for their performance must necessarily be germane to, and considered part and parcel of, that employers day-to-day business operations.

Applying the guidelines[8] of *Murphy* to the instant case, the employee was injured while he was unloading steel from trucking company's truck at his employers' place of business. Trucking company's activities consist of the operation of trucks. Loading, transporting and unloading of goods has a minimal connection to Service Center's activity and cannot be considered an "integral part" of the steel business. Under the second part of the test—whether it is within the "range of the activities customarily carried out" by the employee's hirer—these transportation activities are simply not part of the range of activities considered "integral" to Service Center's business.

vency undoubtedly influenced the legislature to specifically tilt the Act in employee's favor toward *finding* an insured or solvent employer. At the time it was drafted, very few workers were covered *except* common laborers. The scheme worked according to the intended legislative policy for a time but as more occupations came under the Act the vertical construction project oriented model on which it was based has been gradually replaced with fixed-base continual operation industry. See footnote 6. This left to the courts the increasingly difficult task of harmonizing § 12 exclusivity with third party, claim-saving § 44.

**6.** The first important attempt at reconciling and settling this conflict was *W. P. Atkinson Enterprises v. District Court of Okla. County,* 516 P.2d 541 (Okl.1973) where the supreme court laid the troubling "pecuniary gain test" aside and declared:

> [w]e now recognize that the only relevant issue in determining secondary liability is

> whether the employee of the independent contractor is engaged in work that is a necessary and integral part of the employer's principal business ... (emphasis added)

*Atkinson,* remained the decisional standard for seven years, although it did not necessarily result in less confusion. The issue was taken up again when the supreme court rendered its decision in *Murphy.* Building on *Atkinson,* the supreme court went further and formulated what amounts to a more refined test as to whether the employer-defendant in a third party action is liable in tort or is insulated by the compensation act.

**7.** This opinion contains a remarkably comprehensive survey of this entire legal controversy.

**8.** Both *Atkinson* and *Murphy* arose from traditional construction project contractor/owner business relationships. Neither case lends itself logically to the factual relationships of the instant case.

If after applying the above "task related test," the factual issue to be resolved still remains unclear or tenuous, we hold it is further necessary to "check" the results with the all important "heart of the dispute." [9] A factual determination must be made whether trucking company would also qualify to be classified as a "statutory employer," within the meaning of § 11. In other words is he "secondarily liable" to pay workman's compensation benefits for Service Center's employees which might be injured during such an operation? *Murphy* implicitly requires such a finding, as does common sense.

In the case at bar, the only business connection between trucking company and employee is trucking company's delivery of goods and materials to employee's employer. It is one of many such daily business contacts trucking company makes as a result of the type of business it is in. Thus even though its delivery of goods and materials may be an integral, even indispensible service to Service Center, that limited transaction, by itself, would not transform them into a "secondary employer" of its customers' shipping and receiving employees.

It is technically the performance of a *contract*, and it is made by an *independent contractor* but it is more in the nature of an isolated transaction, not a proxy-like carrying out of a principal employer's usual day-to-day activity as contemplated by § 11. Artificially extending workers' compensation liability on such minimal business contact to such a casual "independent contractor" as the trucking company would amount to pure legal sophistry. It is neither necessary to the employee's protection nor a valid objective of the Act. Employees' third party negligence claims in the course of employment should not be denied where the third party defendant has such a minimal business relationship to principal employer's business activity.[10]

The lesson of *Murphy* seems to be that *both* employers' activity must be examined to determine whether the independent contractor's activity justifies a conclusion that the defendant employer is *in fact* a "secondary employer" within the meaning of § 11. Could Service Center require trucking company to furnish workers' compensation insurance for its (Service Center's) own dock workers? That is precisely what the Act requires of owners who hire other "secondary employers" to carry out necessary and integral tasks. We find it incredible that the trucking company can seriously argue that it (trucking company) and its insurance carrier consider they are obligated to provide compensation coverage to the dock employees of its customers as a matter of law. This result defies logic, common sense and the expressed intent of the Act. It would certainly be no precedential "favor" for the common carrier industry, in the long run.

■ Trucking company argues employee is foreclosed from raising this issue on appeal by reason of a district court rule which reads, in part, as follows:

BRIEFS

Every motion and demurrer filed, ... *shall* be accompanied by a concise brief containing a citation of authority relied upon.

The opposing party *may* file a response brief to the motion and/or demurrer. A response brief, *if filed*, must be filed

9. *Murphy*, supra.

10. In *Horowitz Iron & Metal Co. v. Myler*, 207 Okl. 691, 252 P.2d 475 (1952) employee of common carrier was injured by negligence of the customer's employee. Supreme court held common carrier was not secondary employer of customer and approved the third party negligence claim.

In *Aycox v. Pepsi Cola Bottling Co.*, 331 P.2d 367 (Okl.1958) the supreme court denied compensation death claim of uninsured common carrier's driver, citing *Horowitz* with approval.

These cases are factually distinguishable from the apparently conflicting holding in *Sun Oil Co. v. Martin*, 541 P.2d 841 (Okl.1975). *Sun* was sued in tort by carrier's truck driver. The court declared Sun a secondary employer, thus immune by reason of the Act. The decision turned on the fact that Sun maintained and operated its own fleet of trucks for delivery of its own products. Here, the common carrier was performing an ordinary "day-to-day" function for Sun by augmenting an ordinary integral task of its employer.

within ten (10) days of the filing of the motion and/or demurrer.

[F]ifteen days subsequent to the filing of the motion and/or demurrer, *whether a response brief is received or not*, the court may rule upon the pending motions and/or demurrers. . . . (emphasis added)

We note that where the "response brief" is mentioned it is always couched in terms of *permissiveness* as opposed to being *directive*. Under these circumstances we hold the court's rule does not *require* a response brief be filed; it only *permits* one to be filed within a certain time period. The rule automatically establishes a briefing time cycle and permits the court to timely rule on the motion. It is merely an administrative device which may not be used to circumvent a statutory right to appeal. We therefore hold, where no response brief is filed, that an adverse ruling does not preclude the aggrieved party from appealing from an erroneous order. It merely serves to bind him, for the purpose of that ruling, to whatever facts are fairly pled or presented to the court by way of affidavit.

It is therefore our ruling based on the facts fairly pled in the petition, answer, and affidavits that the trial court improperly and erroneously dismissed third party cause of action against F–B truck line. We therefore reverse the holding of the trial court, and order the case reinstated for further proceedings.

BACON, P. J., concurs.

BRIGHTMIRE, J., concurs in result.