John A HAMMOCK, Plaintiff–
Appellant,

v.

UNITED STATES of America,
Defendant–Appellee.

No. 02–6126.

United States Court of Appeals,
Tenth Circuit.

March 28, 2003.

Before HENRY, BRISCOE, and
MURPHY, Circuit Judges.

### CERTIFICATION OF STATE LAW QUESTIONS

HENRY, Circuit Judge.

The United States Court of Appeals for the Tenth Circuit, on its own motion pursuant to 10th Cir. R. 27.1 and Okla. Stat. tit. 20, §§ 1601–1611, hereby certifies to the Oklahoma Supreme Court the following unsettled questions of state law which may determine the outcome of the above-captioned action pending before this court:

1. Does a vendor of merchandise qualify as an "independent contractor" for the retailers it supplies, within the meaning of Okla. Stat. tit. 85, § 11, such that a retailer may potentially assume workers' compensation liability (and quid pro quo tort immunity) as a "principal employer" of the vendor's employees? If the answer depends on the extent to which the vendor contracts to perform substantial services in conjunction with the goods it provides, do the actions of the vendor in this case-delivering, stocking, rotating, inventorying, and promoting the brand of beer it vends-suffice, as a matter of law, to make it the defendant retailer's independent contractor under § 11?

2. If the vendor here qualifies as the defendant retailer's independent contractor (or if that is not a threshold predicate for assessment of the latter's status as a principal employer under

§ 11), does the vendor satisfy, as a matter of law, the "necessary and integral part of [the] business" test for workers' compensation coverage set out in *Murphy v. Chickasha Mobile Homes, Inc.*, 611 P.2d 243, 248 (Okla.1980), and later sharpened by the three-tiered inquiry adopted in *Bradley v. Clark*, 804 P.2d 425, 428 (Okla.1990)?

Our statement of these questions is not meant to limit the Oklahoma Supreme Court's inquiry. We acknowledge the supreme court's reserved authority to reformulate legal questions presented through the certification procedure. *See* Okla. Stat. tit. 20, §§ 1602.1, 1604(A)(3). In accordance with § 1604(A)(2), we summarize the pertinent facts below.

## FACTS

The plaintiff in this case, John A. Hammock, was employed by Southern Sales to deliver, stock, rotate, take inventory and promote the sale of Miller beer at a variety of retail stores. In 1997, he suffered an on-the-job injury at a Fort Sill store run by the Army and Air Force Exchange Service (AAFES), an agency of the Defense Department that provides retail services to military personnel around the world. While replacing a neon advertising sign at the behest of an AAFES employee, Mr. Hammock received a shock from an exposed electrical transformer, knocking him from a ladder and causing him serious injury. After administrative redress was denied, he filed this suit under the Federal Tort Claims Act, claiming that the exposed transformer was a dangerous condition and that AAFES breached the duty of care it owed him as a business invitee to correct or warn of the condition.

The United States moved for summary judgment, asserting it was insulated from tort liability by virtue of its status as Mr. Hammock's principal employer under the Oklahoma workers' compensation scheme. In the government's view, AAFES hired Southern Sales to perform services that were a "necessary and integral part of [AAFES'] business"—the standard for determining when an entity retains worker's compensation liability with respect to a contractor's employees. *Murphy*, 611 P.2d at 248. In particular, the United States argued its relationship with Southern Sales satisfied the three-tiered inquiry the Oklahoma Supreme Court adopted "as a sharp tool for implementing the *Murphy* standards" in *Bradley*, 804 P.2d at 428. That inquiry, imported from the Louisiana Supreme Court's decision in *Berry v. Holston Well Service, Inc.*, 488 So.2d 934, 937–39 (La.1986), focuses on the scope of the contractor's work and asks: (1) whether the work is specialized; (2) whether, on a factual comparison, the work is "part of the hirer's trade, business or occupation;" and (3) whether the hirer was actually "engaged, at the time of the injury, in the trade, business or occupation of the hired contractor." *Bradley*, 804 P.2d at 428 n. 10 (quotations omitted).

The government argued generally that Southern Sales' vending operation did not entail specialized work, and more specifically that the commercial driver's license required for making truck deliveries did not implicate "a degree of skill, training, experience, education and/or equipment not normally possessed by those outside [Southern Sales'] contract field." *Id.* Regarding the functional and actual overlap between AAFES and Southern Sales, the government offered an affidavit from an AAFES vice president, who explained in detail its internal operations. Noting these included the transport of inventory from AAFES' own warehouses to its retail outlets, the government contended that in contracting for product vended by Southern Sales, AAFES had simply hired the company to do delivery work it also routinely did for itself. Thus, the government concluded, the relationship between

AAFES and Southern Sales satisfied the *Bradley* test and, consequently, its liability to Mr. Hammock was exclusively through workers' compensation.

Mr. Hammock advanced two distinct lines of argument against application of the worker's compensation scheme. First, he argued that the extension of a hirer's liability for workers' compensation to employees of certain independent contractors—and the *Bradley* test through which that extension is implemented—is categorically inapposite in the context of a vendor-vendee relationship, which involves the provision of goods by a supplier rather than the performance of services-for-hire by a contractor. He noted that the same court that originally crafted the test adopted in *Bradley* had recognized a clear-cut distinction between vendors and contractors in this regard. *See Broussard v. Heebe's Bakery, Inc.*, 263 La. 561, 268 So.2d 656, 660 (1972) (holding workers's compensation act inapplicable "where the transaction between the [plaintiff's] immediate employer and the [purported principal] ... employer is that of purchase and sale, or where some other relation besides that of principal and contractor exists between them"); *see also Rance v. Harrison Co.*, 737 So.2d 806, 809 (La.Ct.App.1999) (reflecting continuing validity of *Broussard* distinction between independent contractor and vendor). He also noted that the South Carolina courts recently recognized the same point in *Meyer v. Piggly Wiggly No. 24, Inc.*, 331 S.C. 261, 500 S.E.2d 190, 193 (1998), *aff'd*, 338 S.C. 471, 527 S.E.2d 761, 763 (2000).

Alternatively, Mr. Hammock argued that Southern Sales' vending service did not, in any event, constitute work that was a necessary and integral part of AAFES' retail business under the *Bradley* test. He pointed to the commercial driver's license required for truck deliveries, as well as the training in product display and in-ventory provided by the beer manufacturer, as indications that the contract work was specialized. He also argued that Southern Sales' business of vending beer to retailers was not, in any event, a part of AAFES' business of retailing general merchandise to its customers.

The district court agreed with the United States. The court discounted the vendor cases cited by Mr. Hammock because they were decided by non-Oklahoma courts under other workers' compensation statutes, and noted that Oklahoma had not specifically recognized what it characterized as "a vendor/vendee exception" to workers' compensation coverage. As for the *Bradley* test, the court held that product delivery does not entail specialized skills and that AAFES, through its own extensive inventory-distribution operations, was conducting the same business for which it engaged Southern Sales.

Mr. Hammock appealed, and the parties reasserted the positions taken in the district court. In light of the lack of state precedent directly on the legal points raised by this appeal, we have decided to seek the authoritative guidance of the Oklahoma Supreme Court on the questions articulated above.

## PROCEDURAL ORDERS IMPLEMENTING CERTIFICATION

We order this appeal stayed pending resolution of the questions certified above. We direct the Clerk of this Court to transmit a copy of this certification order to the parties and to forward a copy of this order, together with the parties' briefs (which also display the names and addresses of counsel of record, *see* Okla. Stat. tit. 20, § 1604(A)(4)), to the Oklahoma Supreme

Court pursuant to Okla. Stat. tit. 20, § 1603.1.