2003 OK CIV APP 80

**James ARMSTRONG, Plaintiff/Appellant,**

**v.**

**Gary CARR, an individual; and Glover Construction, an Oklahoma corporation, Defendants/Appellees,**

**and**

**Clarendon National Insurance Company, Intervenor.**

**No. 98,532.**

Court of Civil Appeals of Oklahoma, Division No. 2.

May 20, 2003.

Certiorari Denied Sept. 22, 2003.

Michael R. Green, Stites & Green, Tulsa, OK, for Plaintiff/Appellant.

A. Camp Bonds, Jr., Bonds Matthews Law Firm, Muskogee, OK, for Defendant/Appellee Gary Carr.

Brian J. Goree, James K. Secrest II, Richard C. Honn, Tulsa, OK, for Defendant/Appellee Glover Construction Company.

Opinion by RONALD J. STUBBLEFIELD, Judge.

¶ 1 Plaintiff appeals from order of the Trial Court granting summary judgment to Defendants based on its determination that they were immune from tort liability under 85

O.S.2001 §§ 11 and 12,[1] and that Plaintiff's exclusive remedy was under the Workers' Compensation Act. The appeal has been assigned to the accelerated docket. *See* Okla. Sup.Ct. R. 1.36, 12 O.S.2001, ch. 15, app. 1.

## BACKGROUND FACTS AND PROCEDURAL HISTORY

¶ 2 Plaintiff, James Armstrong, was injured on May 19, 1998, as a result of a physical altercation with Defendant Gary Carr (Carr), which occurred on the premises of Defendant Glover Construction Company (Glover). At the time of the altercation, Plaintiff was employed by Browning Trucking as a truck driver. Glover was in the business of making asphalt and building and maintaining asphalt roadways. Glover, which had a contract with the State of Oklahoma Department of Transportation, contracted with Browning to provide day-to-day transportation of asphalt between Glover's temporary production plant and the asphalt "lay-down site" specified in the state highway construction contract. Carr was the Glover employee who supervised the loading of asphalt at the temporary plant. Plaintiff was injured by Carr while loading asphalt to haul to the State job site. He had not seen or spoken to Carr prior to the date of the incident.

¶ 3 Plaintiff pursued a workers' compensation claim against his direct employer, Browning Trucking for alleged injuries to his head, neck, back, arms and legs, as well as internal injuries. The injuries were determined to be compensable, and he was awarded benefits for permanent partial disability by the Workers' Compensation Court.

¶ 4 In early 2000, Plaintiff filed the present action naming Carr and Glover as parties defendant. He alleged he was a victim of an unprovoked assault and battery by Carr and suffered injuries as a result of Carr's intentional acts. He claimed Glover was liable under *respondeat superior* theory, and also because Glover's management purportedly knew of a prior assault and/or battery committed by Carr, and was therefore negligent

in the hiring, training and supervision of Carr. Finally, Plaintiff alleged Glover was negligent in failing to provide a safe work place for business invitees and in failing to adhere to industry custom and practices regarding safety equipment.

¶ 5 In his answer, Carr admitted that the altercation occurred, but denied it was unprovoked. He denied the remaining allegations of the petition. In its answer, Glover also admitted that the altercation occurred, but claimed it was a "mutual affray" and that Plaintiff's claims based on Carr's conduct were barred by the doctrines of comparative fault, "self-defense" and "voluntary assumption of a known risk."

¶ 6 The Trial Court allowed Clarendon National Insurance Company, the workers' compensation insurance carrier for Browning Trucking, to intervene in the action. The insurance carrier asserted that it had paid approximately $103,000 in benefits to Plaintiff and sought to protect its subrogation rights.

¶ 7 Glover sought summary judgment on the basis of the affirmative defense that Plaintiff's claims were barred by the exclusive remedy provision of the Workers' Compensation Act, found at 85 O.S.2001 § 12, which provides immunity to Plaintiff's "intermediate" or "principal" employer. Glover submitted evidentiary materials tending to show that it was Plaintiff's principal employer, secondarily liable under the Workers' Compensation Act, and, therefore, not subject to civil liability in tort.

¶ 8 Carr also sought summary judgment, asserting that, as Glover's employee, he also was immune from suit. Carr adopted the argument and authority set forth in Glover's summary judgment brief.

¶ 9 Plaintiff objected to Defendants' motions, but his response brief left the material facts set forth by Defendants essentially undisputed. In particular, Plaintiff agreed with the fact that Glover "was in the business of building asphalt roadways." However, Plaintiff submitted evidentiary materials to at-

---

1. We refer to the current version of the statutes. Amendments to portions of section 11 are not pertinent to the issues of this appeal, and the provisions of section 12 have not been amended.

tempt to show the work performed by Browning Trucking, which he described as the "hauling of asphalt," was not a necessary and integral part of Glover's business, which he characterized as "asphalt production."

¶ 10 The Trial Court granted summary judgment in favor of Glover and Carr. The Trial Court concluded that hauling asphalt from the temporary plant to the job site was a necessary and integral part of the business of building asphalt roads. The Trial Court concluded that the general contractor, Glover, was a principal employer in such a situation. The Trial Court granted summary judgment to Glover and its employee, Carr, based on its conclusion that Plaintiff's exclusive remedy was under the Workers' Compensation Act.

¶ 11 Plaintiff filed a motion for new trial, which was denied. Plaintiff appeals.

### STANDARD OF REVIEW

¶ 12 The appellate standard of review of a trial court's grant of summary judgment is *de novo*. *Carmichael v. Beller*, 1996 OK 48, ¶ 2, 914 P.2d 1051, 1053. On review, this Court will examine the pleadings and evidentiary materials submitted by the parties to determine if there is a genuine issue of material fact. *Id.* All inferences and conclusions to be drawn from the evidentiary materials will be viewed in the light most favorable to the non-moving party. *Id.* Summary judgment is appropriate where there is no substantial controversy as to any material fact, and it appears that a party is entitled to judgment as a matter of law. *Vince Allen & Assocs., Inc. v. Delhi Gas Pipeline Corp.*, 1989 OK CIV APP 56, ¶ 7, 788 P.2d 414, 415–16.

### DISCUSSION OF ISSUES

I. Statutory Immunity Under the Workers' Compensation Act

¶ 13 Plaintiff's appellate contentions are essentially the same arguments he made below. He challenges the lower court's determination that Glover stood in the position as his principal employer, and takes particular exception to the Trial Court's underlying determination that his job function—the "haul-

ing of asphalt"—was a "necessary and integral" part of Glover's trade or business. For the following reasons, we agree with the Trial Court.

¶ 14 Under the provisions of 85 O.S.2001 § 11(B)(1), "the principal employer shall also be liable in the manner hereinafter specified for compensation due all direct employees, employees of the independent contractors, subcontractors, or other persons engaged in the general employer's business...." Tort immunity is afforded to principal employers who bear workers' compensation liability under section 11. 85 O.S.2001 § 12.

¶ 15 In *W.P. Atkinson Enterprises, Inc. v. District Court of Oklahoma County*, 1973 OK 97, ¶ 15, 516 P.2d 541, 544, the Oklahoma Supreme Court established the rule that a hirer would have secondary workers' compensation liability for the activities of his independent contractor, only if the work done by the independent contractor is a "necessary and integral" part of the hirer's principal business. Then, in *Murphy v. Chickasha Mobile Homes, Inc.*, 1980 OK 75, 611 P.2d 243, the high Court fashioned "a helpful two-part task-related standard" for determination of a hirer's status as a statutory section 11 employer. *Id.* at ¶ 10, 611 P.2d at 248. The *Murphy* Court stated that tasks performed by an independent contractor are a "necessary and integral" part of a principal/hirer's operation when (1) directly associated with the day-to-day activity carried on by the hirer's business, or (2) customarily done in that line of business. *Id.* The Court further explained that the activities encompassed by the contractual relationship of the statutory employer and the skills needed for their performance must necessarily be germane to, and considered part and parcel of, that employer's day-to-day business operations. *Id.*

¶ 16 Subsequently, in *Bradley v. Clark*, 1990 OK 73, 804 P.2d 425, the Oklahoma Supreme Court gave further guidance in addressing the issue and elucidated a "sharp tool" for implementing the *Murphy* standards. *Bradley* at ¶ 6, 804 P.2d at 428. The *Bradley* Court adopted an analysis fashioned by the Louisiana Supreme Court in *Berry v.*

*Holston Well Service, Inc.,* 488 So.2d 934, 937–39 (La.1986), which first required inquiry into whether the contract work was specialized or non-specialized. If the work was non-specialized, then the inquiry shifted to a comparison of the principal/hirer's trade, business or occupation with the contract work to determine if the latter could be considered part of the hirer's trade, business or occupation. The third and last tier of the *Berry* analysis was to determine whether the hirer was actually engaged, at the time of the injury, in the trade, business or occupation of the hired contractor. *Bradley,* 1990 OK 73 at ¶ 6 n. 10, 804 P.2d at 428.[2]

¶ 17 As we previously noted, the material facts in regard to Glover's business are essentially undisputed. The main point of contention between the parties is whether, under the agreed facts and upon application of the rules enunciated in *Murphy* and *Bradley,* Glover can be considered an intermediate or principal employer.

■ ¶ 18 Plaintiff's primary argument is that the contract work provided by Browning Trucking was specialized *per se,* and therefore, under *Bradley,* as a matter of law was not a necessary and integral part of Glover's business. Glover, on the other hand, argues that Browning Trucking's services are not specialized *per se.* Plaintiff's alternative argument is that, even if the contract work was not specialized, the work still could not be considered as part of Glover's trade or business, which he attempts to characterize as "asphalt provider."

¶ 19 We are unable to conclude, after examination of the record, that the contract work was "specialized *per se.*" To support this argument, Plaintiff submitted the affidavit of Browning Trucking's president, who stated that operation of dump trucks in the asphalt construction business required "specialized skills," and only "skilled mechanics" are allowed to perform maintenance on the trucks. Here, however, Plaintiff was not a mechanic, but a truck driver.

¶ 20 Glover's evidentiary materials showed that the contract work actually being performed—picking up and hauling loads of asphalt to the lay-down site—was not, by industry standards, considered to be specialized. The terms of Glover's contract with the State for asphalt highway construction differentiate between "basic work" and "specialty items." Paul Glover, the owner of the company, described the contract as a "standard government contract," with the same general provisions for every asphalt highway construction contractor. The contract defines "specialty items" as work requiring "highly specialized knowledge, abilities or equipment," a kind of work not "ordinarily available" to contractors who bid on highway construction jobs. It is not disputed that for many years Glover did use its own trucks and drivers to haul asphalt to paving sites. Thus, the evidentiary materials simply do not support a conclusion that the contract work was specialized *per se.*

¶ 21 Moreover, Plaintiff's interpretation of Glover's trade or business as an "asphalt provider" is overly restrictive. The evidentiary materials clearly establish that Glover's trade/business was not so limited. Indeed, Plaintiff listed as an undisputed fact: "Glover Construction is in the business of building asphalt roadways."

¶ 22 Glover submitted testimony from its President of Operations and Asphalt Superintendent regarding the company's methods for building and maintaining asphalt roads. Glover has only one permanent plant site, but it could have several temporary plant sites, with locations dependent on the size of a particular job and location of the job site. For nearly twenty years, Glover has contracted with various trucking companies and independent truckers to haul asphalt from its plants to the "lay down machine" at construction sites. On the date of Plaintiff's injury, there were several trucks operated by several contractors, including Browning Trucking, hauling asphalt to the State job site.

**2.** This Court notes that the Louisiana Legislature specifically rejected the approach adopted in *Berry,* through amendment to the "statutory employer" provisions of its workers' compensation laws.

*See* La.Rev.Stat. Ann. § 23:1061 (West Supp. 1990). However, that would have no bearing on the adoption by our high court of the same rule.

¶ 23 We find that the record conclusively establishes that the contract work performed by Browning Trucking—transportation of the asphalt from the plant to the lay-down site—was routine, customary work associated with Glover's day-to-day activity and essential to Glover's ability to conduct its business. Therefore, the Trial Court did not err in finding that Glover was a principal employer and immune from tort liability under sections 11 and 12. *See Bradley,* 1990 OK 73 at ¶¶ 9–10, 804 P.2d at 429. However, in regard to employee Carr we find that the Trial Court's judgment constitutes fundamental error, and must be reversed.

## II. The Intentional Tort

¶ 24 Plaintiff's claim against Carr is that of an intentional tort—that Carr intentionally assaulted him, inflicting serious bodily injury. The long-standing rule is that workers' compensation is the exclusive remedy for an injured worker unless the injury was willfully inflicted by the employer. *United States Zinc Co. v. Ross,* 1922 OK 247, ¶ 0, 208 P. 805, 806 (sylls. 1, 2 by the Court). In *Roberts v. Barclay,* 1962 OK 38, 369 P.2d 808, the Oklahoma Supreme Court reiterated the rule, stating:

Since our Workmen's Compensation Law by its terms applies only to disability or death resulting from accidental injuries . . . it may be conceded that an employee who has been wilfully injured by his employer has a common law action for damages.

*Id.* at ¶ 4, 369 P.2d at 809 (citation omitted). Relying on *Roberts,* this Court in *Thompson v. Madison Machinery Company, Inc.,* 1984 OK CIV APP 24, ¶ 17, 684 P.2d 565, 568 held:

This court, like those before us, determines that the workers' compensation statutes were designed to provide the exclusive remedy for accidental injuries sustained during the course and scope of a worker's employment. The statutes were not designed to shield employers or co-employees from willful, intentional or even violent conduct.

¶ 25 Thus, it is clear that a claim under the Workers' Compensation Act is the exclusive remedy for accidental injuries covered by the Act, *but not for intentionally inflicted injuries.* Because Plaintiff alleges that Carr assaulted him, intentionally inflicting injuries upon him, that claim is not barred by section 12. Therefore, entry of judgment for Carr by the lower court, as a matter of law, was fundamental error because it is apparent on the face of the record that Plaintiff claimed Carr *intentionally injured him.* It is likewise apparent from the record that there was a substantial controversy of fact regarding the nature of the altercation between Plaintiff and Carr, which also prevented the entry of summary judgment in Carr's favor.

¶ 26 We have also reviewed the record to determine if the allegation of intentional injury might apply to Glover. We conclude it cannot. In *Thompson,* this Court found that an intentional assault by an employee could not be attributed to the employer based on *respondeat superior.* And Plaintiff's claim of Glover's liability based on negligence—in hiring, training, and supervising Carr and in maintaining the workplace—is the type of claim that is barred by the exclusive remedy provision of section 12. Therefore, we again conclude that the grant of judgment in favor of Glover was correct.

## CONCLUSION

¶ 27 Upon application of the *Bradley* analysis to the undisputed material facts of this case, we find that Glover established its entitlement to an immunity defense under sections 11 and 12 of the Workers' Compensation Act. However, Defendant Carr is not entitled to the defense where the claim against him is based on a purported willful, intentional act. Accordingly, we affirm the grant of summary judgment to Glover, but reverse the judgment in favor of Carr and remand for further proceedings.

¶ 28 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS.

COLBERT, V.C.J., and TAYLOR, P.J., concur.